*In re* MANUFACTURER'S FREIGHT FORWARDING CO.

MICHIGAN PUBLIC UTILITIES COMMISSION *v.* MANUFACTURER'S FREIGHT FORWARDING CO.

1. CONSTITUTIONAL LAW—LEGISLATURE—COURTS.

A distinction between legislative acts and judicial acts arises from the fact that the legislature makes the law, courts apply it; that enactment of laws is the exercise of legislative

. power, interpretation, an exercise of judicial power; that legislative power prescribes rules of action and judicial power determines whether, in a particular case, such rules of action have been transgressed; that the legislature prescribes rules for the future and the judiciary ascertains existing rights (Const. 1908, art. 4).

2. Same—Judicial Inquiry—Legislation.

A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist, while legislation, on the other hand, looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power (Const. 1908, art. 4).

3. Same—Division of Powers of State Government.

The powers of State government are apportioned between three distinct departments which emanate alike from the people, have powers alike limited and defined by the Constitution, are of equal dignity, and within their respective spheres of action equally independent; the very apportionment of power to one department being understood to be a prohibition of its exercise by either of the others (Const. 1908, art. 4).

4. Same—Common Carriers—Rate-Making Power.

The determination of what are just and reasonable rates for a common carrier is a legislative or administrative function, not a judicial one.

5. Same—Rate-Making Power—Courts.

When the legislature, or the body acting under its authority, establishes the rate to be thereafter charged by the carrier, it is the duty of the courts to enforce the rule of law so made unless the constitutional limits of the rate-making power have been transgressed.

6. Same—Judicial Review of Rate-Making Power.

The power to make rates for carriers necessarily implies a range of legislative discretion, and, so long as the legislative action is within its proper sphere, the courts cannot interpose and, upon their own investigation, substitute their judgment with respect to the reasonableness of rates for that of the legislature or commission exercising its delegated power, the courts being limited to a determination of whether the action complained of was capricious or arbitrary, hence unlawful.

7. Same—Administrative Orders—Courts.

Administrative orders operating *in futuro* are not to be disturbed by the courts except upon a showing that they are unsupported by evidence, were made without a hearing, exceed constitutional limits, or for some other reason amount to an abuse of power.

8. Same—Presumption of Correctness of Executive Action.

The presumption that final decision of a claim or controversy calling for executive action is correct is just as conclusive as the presumption in favor of the correctness of judicial action.

9. Same—Legislative Interference with Judicial Power.

When legislation seeks to control judicial action to the extent of dictating the substance of decrees and forbidding any lesser degree of restraint, regardless of equity and justice, there is a departure from legislative power and an unwarranted interference with judicial power.

10. Same—Supreme Court—Jurisdiction.

Jurisdiction of Supreme Court as fixed by the Constitution cannot be increased or diminished by the legislature (Const. 1908, art. 7, § 4).

11. Public Service—Judicial Review.

While in a proper case the Supreme Court may have authority to pass upon whether the public utilities commission acted within the scope of its power, the court has no right to pass upon disputed facts and is confined exclusively to passing upon the law in the particular case, nor may it, in its exercise of its judicial function in reviewing the commission's order, pass upon legislative questions (Act No. 212, § 13, Pub. Acts 1931; Act No. 312, § 8, Pub. Acts 1931; Act No. 254, art. 5, § 20, Pub. Acts 1933).

12. Appeal and Error—Appellate Jurisdiction of Supreme Court.

The appellate jurisdiction of the Supreme Court does not extend to the power to rehear and redetermine issues of fact which have been tried before boards, bureaus and commissions but is confined to the power and authority to rehear and redetermine cases which have been tried in inferior courts.

13. Constitutional Law—Jurisdiction of Supreme Court—Legislature.

The jurisdiction of the Supreme Court is fixed and defined by the Constitution and may not be granted or withheld by the legislative department (Const. 1908, art. 7, § 4).

14. SAME—ORIGINAL JURISDICTION OF SUPREME COURT.

The question of review does not come within the original juris-
diction of the Supreme Court as defined by the Constitution
(Const. 1908, art. 7, § 4).

15. SAME—APPELLATE JURISDICTION OF SUPREME COURT.

The appellate jurisdiction of the Supreme Court is applicable
only from judgments, orders or decrees of courts of inferior
jurisdiction and cannot lie from boards, bureaus and com-
missions acting in a legislative capacity (Const. 1908, art. 7,
§ 4).

16. APPEAL AND ERROR—COURTS—OFFICERS.

Appeals lie only from one court to another, not from an executive
officer to a court, hence there must be a competent judicial
tribunal to pass upon a case before an appeal can be taken to
a higher court.

17. SAME—DEFINITION OF APPEAL.

An appeal in law is the removal of a matter or cause from an
inferior to a superior court for the purpose of reviewing, cor-
recting, or reversing the judgment or sentence of the in-
ferior tribunal.

18. SAME—TECHNICAL MEANING OF APPEAL.

The term ''appeal,'' in its technical and appropriate sense,
means the removal of a suit or cause and its final determina-
tion from an inferior court, after final judgment therein, to
a superior court for a trial *de novo* on its merits.

19. AUTOMOBILES—CONTRACT MOTOR CARRIERS—APPEAL FROM PUB-
LIC UTILITIES COMMISSION.

The Supreme Court had no power or authority to review questions
raised by appeal from denial by public utilities commission of
application for supplemental contract motor carrier permit
(Const. 1908, art. 4; art. 7, § 4; Act No. 212, §§ 6, 13, Pub.
Acts 1931; Act No. 312, §§ 4, 8, Pub. Acts 1931; Act No.
254, art. 2, §§ 6–8, art. 3, art. 5, § 20, Pub. Acts 1933).

Appeal from Public Utilities Commission. Sub-
mitted April 29, 1940. (Docket No. 135, Calendar
No. 38,002.) Decided June 3, 1940.

Petition by the Manufacturer's Freight Forward-
ing Company for a permit as a contract carrier to

extension of its routes. From order denying permit, petitioner appeals. Appeal dismissed.

*Charles W. Gore,* for petitioner.

*Patrick H. O'Brien,* Attorney General, *Perry A. Maynard* and *James W. Williams,* Assistants Attorney General, and *Richard Chapman,* Special Assistant Attorney General, for Michigan Public Utilities Commission.

POTTER, J. The Manufacturer's Freight Forwarding Company appeals from an order of the Michigan public utilities commission made July 2, 1934, finding that the proposed operation of plaintiff as a contract carrier would impair the efficient public service of certain authorized common and contract motor carriers now adequately serving the same territory.

Plaintiff procured a license as a contract carrier from the Michigan public utilities commission. Subsequently it filed a supplemental contract carrier application and this was brought on for hearing before the commission. The commission denied the supplemental contract carrier application, holding that the granting of such private contract carrier application, considered in conjunction with the applicant's present operation, would in fact make it a common carrier, and denying it the right to such supplemental contract carrier permit, but without prejudice to its right to apply for a common carrier permit.

Later, May 29, 1934, another supplemental contract carrier permit was applied for. This was brought on for hearing. Plaintiff testified in relation to the business to be carried on by it in the handling of freight, and in defense Paul G. Scholten of the Western Michigan Transportation Company operat-

ing out of Benton Harbor as a common carrier, Ray Williams who was associated with the Cloverleaf Trucking Company serving the Benton Harbor and St. Joseph territory, and Joseph Mammina who was general manager of the Tri-State Motor Express handling freight out of that territory, were sworn. The commission denied the permit.

The matter came here on application for leave to appeal filed July 13, 1934, and it was ordered that the appeal be allowed, that all proceedings be stayed until the further order of this court, provided "that 30 days from this day, appellant print and file his record on appeal, together with his brief and that *he consent that this appeal be submitted on briefs under Rule No. 71, at the option of the attorney for the commission.*" The attorney for the commission did not exercise his option to have the case heard. The brief filed by the then attorney general was not presented to this court until January 2, 1935, shortly after he retired from office. On the general theory of "letting sleeping dogs lie," we assume, the attorney for appellant, having obtained a stay of proceedings, did not bring the matter on for hearing when it had been ordered it should be brought on for hearing at the option of the attorney for the commission.

The proceedings for appeal in this case are sought to be upheld under Acts No. 212 and 312, Pub. Acts 1931, and Act No. 254, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 11352-1 *et seq.*).

Act No. 212, § 13, Pub. Acts 1931, provided:

"The orders of the commission issued under the provisions of this act shall be subject to review by the Supreme Court of the State, both as to the law and the facts, and the statutes, rules and practice on appeals to the Supreme Court from circuit courts in

equity cases shall apply to and govern proceedings for such review. The Supreme Court is given jurisdiction to hear and determine such matters made reviewable hereunder.''

Act No. 312, § 8, Pub. Acts 1931, and Act No. 254, art. 5, § 20, Pub. Acts 1933, contain the same language.

By the Constitution of this State (1908), art. 4, §'1:

''The powers of government are divided into three departments: The legislative, executive and judicial.''

The Constitution of 1908, art. 4, § 2, also provides:

''No person belonging to one department shall exercise the powers properly belonging to another, except in the cases expressly provided in this Constitution.''

''There is a distinction between legislative and judicial acts. The legislature makes the law—courts apply it. To enact laws is an exercise of legislative power; to interpret them is an exercise of judicial power. To declare what the law shall be is legislative; to declare what it is or has been is judicial. The legislative power prescribes rules of action. The judicial power determines whether, in a particular case, such rules of action have been transgressed. The legislature prescribes rules for the future. The judiciary ascertains existing rights.'' *In re Application of Consolidated Freight Co.,* 265 Mich. 340.

As said in *Prentis* v. *Atlantic Coast Line Co.,* 211 U. S. 210 (29 Sup. Ct. 67):

''A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.''

"Our government is one whose powers have been carefully apportioned between three distinct· departments, which emanate alike from the people, have their powers alike limited and defined by the Constitution, are of equal dignity, and within their respective spheres of action· equally independent. One makes the laws, another applies the laws in contested cases, while the third must see that the laws are executed. This division is accepted as a necessity in all free governments, and the very apportionment of power to one department is understood to be a prohibition of its exercise by either of the others. The executive is forbidden to exercise judicial power by the same implication which forbids the courts to take upon themselves his duties." *People, ex rel. Sutherland,* v. *Governor,* 29 Mich. 320 (18 Am. Rep. 89).

The law provided for the granting of a certificate of public convenience and necessity (Act No. 212, § 6, Pub. Acts 1931); and that no public carrier should charge, demand, or collect or receive a greater or less or different remuneration for the transportation of property, or for any service in connection therewith, than the rates, fares and charges which had been legally established and filed with the commission. There were prohibitions against the refunding of charges. Act No. 312, § 4, Pub. Acts 1931. There were provisions in the statute of 1933 (Act No. 254, art. 2, §§ 6, 7) providing for the publication and filing of rates, that the rates, fares and charges made by any common carrier should be just and reasonable and not discriminatory, prejudicial or preferential; and (Act No. 254, art. 2, § 8, Pub. Acts 1933) there was a prohibition against rebates. There was provision in the statute (Act No. 254, art. 3, Pub. Acts 1933) vesting the commission with power and authority to supervise the regulation of contract motor carriers of property or passengers, to prescribe minimum rates, fares and charges to be collected by such

contract carriers, to require the filing of annual and other reports and other data by such contract motor carriers. There were other provisions therein in relation to operation.

The determination of what are just and reasonable rates for a common carrier is legislative in character. Mr. Justice GRANT, in *Michigan Telephone Co.* v. *City of St. Joseph,* 121 Mich. 502 (47 L. R. A. 87, 80 Am. St. Rep. 520), said:

"This is a legislative or administrative function, and not a judicial one."

Mr. Justice STEERE, in *City of Traverse City* v. *Michigan Railroad Com'n,* 202 Mich. 575, 581 (P. U. R. 1918 F, 752), said:

"That the State may regulate charges of common carriers, and the power to fix the rates which they may charge the public for their services is a legislative and not a judicial function, is now elemental."

This language was approved in *City of Detroit* v. *Railroad Com'n,* 209 Mich. 395 (P. U. R. 1920 D, 867).

Justice STEERE held that the judicial function or power of the courts was limited to determining whether any particular rate fixed by the legislature or its duly authorized agency is reasonable or otherwise.

"When the legislature, or the body acting under its authority, establishes the rate to be thereafter charged by the carrier, it is the duty of the courts to enforce the rule of law so made unless the constitutional limits of the rate-making power have been transgressed. The rate-making power necessarily implies a range of legislative discretion; and, so long as the legislative action is within its proper sphere, the courts are not entitled to interpose and upon their own investigation of traffic conditions and trans-

portation problems to substitute their judgment with respect to the reasonableness of rates for that of the legislature or of the railroad commission exercising its delegated power." *Louisville & Nashville R. Co.* v. *Garrett,* 231 U. S. 298, 313 (34 Sup. Ct. 48).

"The courts in reviewing the action of the commission have no authority to substitute their judgment as to what is reasonable in a given case for that of the commission, but are limited to determining whether the action complained of was capricious or arbitrary and for this reason unlawful." *People of the State of New York, ex rel. New York & Queens Gas Co.,* v. *McCall,* 245 U. S. 345 (38 Sup. Ct. 122).

"Administrative orders operating *in futuro* are not to be disturbed by the courts except upon a showing that they are unsupported by evidence, were made without a hearing, exceed constitutional limits, or for some other reason amount to an abuse of power." *Manufacturers R. Co.* v. *United States,* 246 U. S. 457 (38 Sup. Ct. 383).

The judicial power is in this State vested in the courts.

In *People, ex rel. Sutherland,* v. *Governor, supra,* it was said:

"The law must leave the final decision upon every claim and every controversy somewhere, and when that decision has been made, it must be accepted as correct.    The presumption is just as conclusive in favor of executive action as in favor of judicial."

In *Nichols* v. *Judge of Superior Court of Grand Rapids,* 130 Mich. 187, where the question involved was whether a court could be created without having given to it the power of punishment for contempt, the court said:

"The Constitution provides that 'no person belonging to one department shall exercise the powers prop-

erly belonging to another, except in the cases expressly provided in this Constitution. * * * There is no provision in the Constitution which expressly or by implication confers upon the legislature control over this important power."

In *People, ex rel. Attorney General,* v. *Holschuh,* 235 Mich. 272, it was said:

"As an equal and co-ordinate branch of the government the judicial power must be permitted to function within its allotted sphere free from mandate of the legislative and executive powers, else be shorn at the will of mere equals. * * * The court will enforce valid legislation and its powers will respond thereto, but when legislation seeks to control judicial action to the extent of dictating the substance of decrees and forbidding any lesser degree of restraint, regardless of equity and justice, there is a departure from legislative power and an unwarranted interference with judicial power."

In *Bielecki* v. *United Trucking Service,* 247 Mich. 661, it was said:

"The Constitution of this State vests judicial power in the courts. The mentioned provision is no more than an attempted legislative mandate to control judicial power."

In *People* v. *McMurchy,* 249 Mich. 147, there is a discussion of constitutional prohibition against the impairment of judicial power.

In *Harker* v. *Bushouse,* 254 Mich. 187, it was said:

"We have repeatedly held that the legislature may not interfere with the judicial power vested in the courts by the Constitution of this State."

In *Re Application of Consolidated Freight Co., supra,* it was said (p. 349):

"The jurisdiction of the Supreme Court is fixed by the Constitution. It can neither be increased nor diminished by legislative enactment."

In that case the question of the validity of Act No. 212, § 13, Pub. Acts 1931, and of Act No. 312, § 8, Pub. Acts 1931, was passed upon by the court. It was said (p. 351):

"The exact question involved is whether there shall be granted a certificate of public convenience and necessity to appellant under which it may operate as a common carrier over a fixed route within the State of Michigan. *Primarily this is clearly a legislative question, not a judicial one.*"

The statutes provide that the Supreme Court shall pass upon both the law and the facts. While in a proper case the Supreme Court may have the authority to pass upon whether the Michigan public utilities commission acted within the scope of its power, it has no right to pass upon disputed facts and is confined exclusively to passing upon the law in the particular case. It cannot in the exercise of its judicial function pass upon questions that are legislative in character. The jurisdiction of this Court does not extend to the power to rehear and redetermine issues of fact which have been tried before boards, bureaus and commissions, but its appellate jurisdiction is confined to the power and authority to rehear and redetermine cases which have been tried in inferior courts. The statutes above referred to provide (a) for a review as to the law; (b) for a review as to the facts; (c) make the statutes, rules and practice on appeals to the Supreme Court from circuit courts in equity cases applicable to such review; and (d) the *Supreme Court is given jurisdiction* to hear and determine such matters made reviewable thereunder.

The jurisdiction of this court is fixed and defined by the Constitution. The legislative department cannot grant or withhold such jurisdiction. The question of review does not come within the original jurisdiction of this Court as defined by the Constitution. If this Court has jurisdiction at all, it must be in the nature of appellate jurisdiction, but the appellate jurisdiction is applicable only from the judgments, orders and decrees of courts of inferior jurisdiction and cannot lie from boards, bureaus and commissions acting in a legislative capacity. The Constitution (1908), art. 7, § 4, provides:

"The Supreme Court shall have a general superintending control over all inferior courts; and shall have power to issue writs of error, *habeas corpus,* mandamus, *quo warranto, procedendo* and other original and remedial writs, and to hear and determine the same. *In all other cases it shall have appellate jurisdiction only.*"

"We cannot lose sight of the fact that appeals only lie from one court to another—not from an executive officer to a court. There must be a competent judicial tribunal to pass upon a case before an appeal can be taken to a higher court." *Ex parte Allen,* 26 Ark. 9.

"It is, therefore, to our minds, manifest that the appellate jurisdiction of this court does not, and under the Constitution can never be made to extend to the proceedings or decision of any officer or tribunal whatever, other than the judicial proceedings or determinations of some court or justice of the peace vested with some portion of judicial power by or under the authority of the Constitution itself." *Dunn* v. *State,* 2 Ark. 229 (35 Am. Dec. 54).

As said by the supreme court of Ohio:

"We have no idea of an appeal, except from one court to another." *Ex parte Logan Branch Bank,* 1 Ohio St. 432.

"Under the practice act this court has appellate jurisdiction only in cases commenced in and tried by *a court*. Before the supreme court can exercise appellate jurisdiction in this case, it must appear that a final judgment has been rendered by the district court in an action or special proceeding commenced in that court, and that the judgment appealed from was rendered in an action or proceeding which the court had power to try and determine." *Lyon County* v. *Esmeralda County,* 18 Nev. 166 (1 Pac. 839).

"Under the laws of this State, we are only authorized to review the record and proceedings of inferior courts, officers, or tribunals acting in a judicial capacity, and exercising judicial functions." *Esmeralda County* v. *Third Judicial District Court,* 18 Nev. 438 (5 Pac. 64).

"An *appeal* in law is the removal of a matter or cause from an inferior to a superior court for the purpose of reviewing, correcting, or reversing the judgment or sentence of the inferior tribunal." *Leach* v. *Blakely,* 34 Vt. 134.

"The word 'appeal' in its technical and appropriate sense, means the taking of a suit or cause and its final determination from one court or jurisdiction after final judgment to another." *Barlow* v. *Daniels & Co.,* 25 W. Va. 512, 521.

"The term 'appeal' was unknown to the common law. It belonged wholly to courts of chancery, and means in its technical and appropriate sense the removal of a suit, and its final determination, from an inferior court, after final judgment in that court, to a superior court, and placing the case in the latter court, to be again tried *de novo* upon its merits, just as though it had never been tried in the inferior court." *Fouse* v. *Vandervort,* 30 W. Va. 327 (4 S. E. 298).

The court had no power or authority under Act No. 212, Pub. Acts 1931, or under Act No. 312, Pub.

Acts 1931, or under Act No. 254, Pub. Acts 1933, to review the questions before the court.

Appeal dismissed, with costs, and the stay of proceedings, heretofore granted, discharged.

BUSHNELL, C. J., and SHARPE, CHANDLER, NORTH, McALLISTER, JJ., concurred with POTTER, J. WIEST and BUTZEL, JJ., concurred in the result.