LOCAL 170, TRANSPORT WORKERS UNION OF AMERICA,
v. GENESEE CIRCUIT JUDGE.

1. CONSTITUTIONAL LAW—SEPARATION OF POWERS—CIRCUIT JUDGES—
MEMBERSHIP ON BOARD ARBITRATING LABOR DISPUTES.

Provision of statute creating a board for compulsory arbitration
of labor dispute, of which a circuit judge shall be a member
and the chairman, is void and unconstitutional as an attempt
to confer upon a judicial officer nonjudicial powers and duties
in violation of the provisions of the Constitution requiring a
separation of the powers of government and creating office
of circuit judge (Const. 1908, art. 4, § 2; art. 7, § 9; Act
No. 176, § 13, Pub. Acts 1939, as amended by Act No.
318, Pub. Acts 1947).

2. COSTS—PUBLIC QUESTION—COMPULSORY ARBITRATION BOARD FOR
LABOR DISPUTE—CIRCUIT JUDGES.

No costs are allowed in proceeding to prohibit a compulsory
arbitration board, of which a circuit judge was required to
be a member, from acting under State labor mediation act, as
amended, in a dispute between public transportation system
and its employees, a public question being involved (Const.
1908, art. 4, § 2; art. 7, § 9; Act No. 176, § 13, Pub. Acts
1939, as amended by Act No. 318, Pub. Acts 1947).

Petition by Local 170, Transport Workers Union of America, and others for writ of prohibition to compel Paul V. Gadola, Genesee Circuit Judge, and others to desist and refrain from constituting themselves as an arbitration board. Submitted May 18, 1948. (Calendar No. 44,038.) Writ granted September 8, 1948. Rehearing denied October 4, 1948.

REFERENCES FOR POINTS IN HEADNOTES
[1] 30 Am. Jur., Judges, § 34.

*Maurice Sugar* and *Ernest Goodman* (*Michael W. Evanoff,* of counsel), for plaintiffs.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for defendants.

*Leon A. Cousens,* for Michigan Divisions 43 and 44, Communications Workers of America, *amicus curiae.*

BUSHNELL, C. J.   This petition for a writ of prohibition raises questions concerning the constitutionality of recent amendments to the Michigan labor mediation act (Act No. 176, Pub. Acts 1939 [Comp. Laws Supp. 1940, §§ 8628-1–8628-21, Stat. Ann. 1946 Cum. Supp. §§ 17.454 (1)–17.454 (21)]), known as the Bonine-Tripp act (Act No. 318, §§ 13, 13a, 22, Pub. Acts 1947 [Stat. Ann. 1947 Cum. Supp. §§ 17.454 (14), 17.454 (14.1), 17.454 (23)]), so far as it provides for compulsory arbitration in the event of a labor-management dispute arising in "any public utility, any municipally owned utility, or any hospital" by a board of which "a circuit judge designated by the presiding circuit judge of the State, shall be chairman."

The portions of the act in controversy are sections 13, 13a and 22, which read as follows:

"SEC. 13. In the event of a dispute arising in any public utility, any municipally owned utility, or any hospital, the board shall not call an election as provided in section 9a of this act, but shall instead certify to the governor the existence of such dispute and the failure to settle the same by mediation.   A copy of such certification shall be immediately transmitted to the representative of the employees, to the employer or his agent and to the presiding circuit judge of this State.   Whereupon the parties to

the dispute, or their representatives, may within 10 days voluntarily agree to submit the issues of the dispute to an arbitration board of their own choosing, in which event both parties to the dispute shall notify the board that they have so agreed. If they fail to do so, an arbitration board shall then be established of which a circuit judge designated by the presiding circuit judge of the State, shall be chairman. The employees or their representative and the employer or his agent shall each appoint 1 member of such arbitration board, which appointment shall be made within 5 days from the date of service of a copy of such certification and notice of such appointment shall be forthwith given to the labor mediation board, the governor and such circuit judge or presiding circuit judge. In the event of the failure to make any such appointment within the time herein limited, the governor shall make such appointment in writing, file a copy thereof with the board, such circuit judge or presiding judge and furnish copy thereof to each of the interested parties.

"It shall be the duty of such arbitration board to hold public or private hearings at any place in the State for the purpose of making a determination of the issues involved in such dispute. Such arbitration board shall have the authority to subpoena witnesses, to compel their attendance, administer oath, take testimony and receive evidence. Such arbitration board shall, as soon as practicable, but within 30 days from the date the issues have been submitted, make a determination of the issues involved in said dispute, file a written copy thereof with the labor mediation board and cause a copy to be delivered by registered mail or otherwise to the employees or their representative and the employer or his agent. A determination by any 2 members of the arbitration board shall be deemed to be the determination of such board. A copy thereof shall also be filed in the office of the county clerk of the county in which is located such principal place of employment. The terms and conditions of em-

ployment of such employees shall be modified in accordance with such determination from the date specified therein and shall be binding on the employer and his agent and the employees and their representative. Whenever any act is required to be performed according to the provisions hereof within a given time limitation, except serving of notices of the existence of disputes, the period so limited may be extended by agreement in writing by all parties concerned.

"Each member of the arbitration board, except such circuit judge, shall be entitled to receive compensation of $25.00 per day during the period of the actual performance of his duties under this act. Each member shall receive his actual travel and other necessary expenses incurred during said period which shall be paid out of the general fund.

"SEC. 13a. In case of the disobedience of a subpoena the board may invoke the aid of any circuit court of the State of Michigan in requiring the attendance and testimony of witnesses pertaining to the issues involved. Any circuit court of this State within the jurisdiction of which such hearings are being held, may in the case of contumacy or refusal to obey a subpoena issue an order requiring such person to appear before said board and give evidence pertaining to the matter in question and any failure to obey such order of the court may be punished by such court as contempt thereof. Any failure to obey a subpoena issued by an arbitration board or contumacy before such board, may be punished by any circuit court of this State within the jurisdiction of which such hearings are being held, as contempt of such court.

"Nothing in this act shall be construed to require an employee to continue rendering labor or service without his consent or to make illegal the quitting of his employment. No court shall have power to issue any process to compel any such employee to continue to render such labor or remain at his place of employment without his consent.

"If after the determination is filed as above provided there is an actual or threatened cessation of employment which causes or may reasonably be expected to result in injury to the public welfare, peace, health or safety the circuit court in chancery of the county in which said determination is filed shall have jurisdiction to issue such injunction as the court may deem proper and adequate to protect the public welfare and preserve public peace, health and safety, subject, however, to the limitations hereinabove set forth: Provided, That no circuit judge shall issue an injunction or preside in any case involving a dispute in which a determination has been made by a board of which he was chairman. In the event that he is the only circuit judge in such circuit, then the judge of any adjoining circuit or other judge designated by the State presiding judge shall have jurisdiction to issue a temporary injunction or order to show cause, including a restraining order in such matter, and the same shall be brought on to be heard before a judge designated by the presiding circuit judge of the State.

"SEC. 22. Any person who either individually or as 1 of a group of persons instigates a strike, or who shall call or cause a strike to be placed in effect, or who shall cause or call a lockout, without first having served notice as required in section 9 of this act, or while mediation is pending as provided in section 9c of this act, or while an election is pending under said section 9, or while arbitration proceedings are pending under sections 9d and 13 of this act, or any person who shall engage in unauthorized picketing as prohibited by this act, or who shall knowingly and wilfully violate any of the rules or regulations promulgated under section 9a and section 9c, or any of the provisions of section 9f, shall upon conviction thereof be punished by a fine of not more than $1,000.00 or by imprisonment in the county jail for not more than 6 months, or by both such fine and imprisonment."

The essential facts are these:

Flint Trolley Coach, Inc. (not represented here), operates a public coach transportation system in Flint, Michigan, under a franchise granted by that municipality. Plaintiff Local 170, chartered by the Transport Workers Union of America, a Congress of Industrial Organizations (CIO), affiliate, having some 222 members, represents all the nonsupervisory operating and shop employees of the company, under a contract dated February 24, 1947, in which it is designated as the exclusive bargaining representative of these employees.

Prior to October 1, 1947, the union submitted proposals to the company regarding those changes in wages, hours and working conditions which it desired in a new contract. When these proposals were rejected by the company, the union, pursuant to the requirements of section 9 of the act, notified the Michigan labor mediation board of the existence of a labor dispute, which "may lead to a strike." Subsequent negotiations and attempts at mediation were unsuccessful and on December 17, 1947, under the provisions of section 13 of the act, the board certified the facts to the governor and sent copies thereof to the parties and to the Honorable Joseph A. Moynihan, the presiding circuit judge of the State. On December 22, 1947, Judge Moynihan designated defendant Paul V. Gadola, judge of the seventh judicial circuit, as chairman of an arbitration board. The company thereafter appointed as its member defendant G. Franklin Killeen. The union, although requested so to do, refused to appoint its member, and the governor then appointed defendant George D. Stevens.

Claiming the board as thus constituted was without jurisdiction and legal authority to act in the premises, the union obtained an order to show cause why a writ of prohibition should not issue "com-

manding said defendants to absolutely desist and refrain from constituting themselves or proceeding as an arbitration board under section 13 of the Michigan labor mediation act and from holding any hearings or making any determination of the issues involved in the dispute between the plaintiff herein and the Flint Trolley Coach, Inc."

We are informed by defendants that statutes providing for compulsory arbitration have been recently enacted in other States as follows:

"Florida: Laws of Florida, 1947, General Laws, Vol. 1, chapter 23911 (No. 297) House Bill No. 954, page 577.

"Indiana: Acts 1947, Indiana, 85th Session, Vol. 2, chapter 341, page 1355.

"Minnesota: Laws of Minnesota, 1947, chapter 335—H. F. No. 882, (Coded as sections 179.35 to 179.39), page 524.

"Missouri: Laws of Missouri, 1947, Vol. 1, Sixty-Fourth General Assembly, (H. B. 180) page 358.

"Nebraska: Laws of Nebraska, 1947, Legislative Bill 349 Introduced by C. Petrus Peterson of Lancaster, page 586.

"New Jersey: New Jersey Statutes Annotated, Permanent Edition, Title 34, Labor and Workmen's Compensation, 1947 Cum. Annual Pocket Part, chapter 13B, page 54.

"Pennsylvania: Laws of Pennsylvania, Vol. 2, 1947, No. 485, page 1161.

"Texas: General and Special Laws, Texas, 50th Legislature. Regular Session, 1947, chapter 84, S.B. No. 178, page 142.

"Virginia: Acts of Assembly, Virginia Extra Session, 1947, chapter 9 (H.B. 6), page 24.

"Wisconsin: Laws of Wisconsin, 1946–1947, chapter 414, No. 91, S. page 713."

On oral argument it was stated that none of the foregoing has been passed upon by any court of last resort.

The merits of compulsory arbitration over collective bargaining and voluntary arbitration are currently the subject of discussion in legislative halls, university classrooms, and the public press. The 80th Congress did not include compulsory arbitration in the labor management relations act of 1947.* Nor is compulsory arbitration a part of the railway labor act of 1926, as amended.†

An act imposing compulsory arbitration, enacted by the legislature of Kansas, in a case involving the meat packing industry, was held to be in conflict with the 14th Amendment in *Chas. Wolff Packing Co.* v. *Court of Industrial Relations of the State of Kansas,* 262 U. S. 522 (43 Sup. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280). But previously in *Wilson* v. *New,* 243 U. S. 332 (37 Sup. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024), it was held that compulsory arbitration in the railroad industry was a valid exercise of constitutional power under the commerce clause of the Federal Constitution.

The court said in *Dorchy* v. *Kansas,* 272 U. S. 306 (47 Sup. Ct. 86, 71 L. Ed. 248), that:

"Neither the common law, nor the 14th Amendment, confers the absolute right to strike."

These are the words of Mr. Justice Brandeis who, after six years experience as chairman of the arbitration board of the New York garment trade, in testifying, prior to his appointment to the bench, before committees of the 62d and 64th Congress, concluded that investigation and conciliation were preferable to compulsory arbitration and that the problems of industry could best be solved without government aid once there is a full understanding of the facts by both employer and employee. (See report

---

* 29 USCA 1947 Cum. Supp. § 441 *et seq.*—REPORTER.
† 45 USCA, § 151 *et seq.*—REPORTER.

of the committee on Interstate Commerce, 62d Congress [2d Sess.]. See, also, Brandeis, Lawyer and Judge in the Modern State, by Alpheus Thomas Mason, Princeton University Press, 1933.) Mr. Justice Brandeis, however, pointed out in his now celebrated dissent in *New State Ice Co.* v. *Liebmann*, 285 U. S. 262, 311 (52 Sup. Ct. 371, 76 L. Ed. 747), that:

"To stay experimentation in things social and economic is a grave responsibility."

In speaking in the same opinion of the power to correct certain evils, he said (p. 311):

"There must be power in the States and the Nation to remould, through experimentation, our economic practices and institutions to meet changing social and economic needs. I cannot believe that the framers of the 14th Amendment, or the States which ratified it, intended to deprive us of the power to correct the evils of technological unemployment and excess productive capacity which have attended progress in the useful arts."

So compulsory arbitration of labor disputes in the field of public utilities and hospitals may, under the police power to safeguard the public interest, be within constitutional limitations, both Federal and State; and certainly so where the facts show a "clear and present danger to the public interest." *Thornhill* v. *Alabama,* 310 U. S. 88 (60 Sup. Ct. 736, 84 L. Ed. 1093); *West Virginia State Board of Education* v. *Barnette,* 319 U. S. 624 (63 Sup. Ct. 1178, 87 L. Ed. 1628, 147 A. L. R. 674); and *Thomas* v. *Collins,* 323 U. S. 516 (65 Sup. Ct. 315, 89 L. Ed. 430).

Furthermore, it seems no more illogical, within proper limits, to fix wages in public utilities by compulsory arbitration than to fix rates. For general discussions in this field, see Simpson on Constitutional Limitations on Compulsory Industrial Arbitration, 38 Harvard Law Review, p. 753 (1925). As

to Bonine-Tripp act (Act No. 318, Pub. Acts 1947 [Stat. Ann. 1947 Cum. Supp. § 17.454 (14)]), see James Morgan Smith on Bonine-Tripp v. Taft-Hartley—Compulsory Arbitration of Labor Disputes in Public Utilities, 9 Detroit Law Review, p. 58 (March, 1948), and Russell A. Smith, The Taft-Hartley Act and State Jurisdiction over Labor Relations, 46 Michigan Law Review, p. 593 (March, 1948).

With respect to probable conflict in basic policy between the labor management relations act of 1947 and the Michigan labor mediation act, *supra,* see *Thornhill* v. *Alabama, supra; Allen-Bradley Local No. 1111, United Electrical, Radio & Machine Workers of America,* v. *Wisconsin Employment Relations Board,* 315 U. S. 740 (62 Sup. Ct. 820, 86 L. Ed. 1154); *Hill* v. *Florida, ex rel. Attorney General,* 325 U. S. 538 (65 Sup. Ct. 1373, 89 L. Ed. 1782); and *Bethlehem Steel Co.* v. *New York State Labor Relations Board,* 330 U. S. 767 (67 Sup. Ct. 1026, 91 L. Ed. 1234). See, also, annotation, 174 A. L. R. 1051 *et seq.*

It is certain that *Chas. Wolff Packing Company* v. *Court of Industrial Relations of the State of Kansas, supra,* and *Wilson* v. *New, supra,* must be considered in the light of more recent decisions involving such matters as the railway labor act* in *Texas & New Orleans Railroad Co.* v. *Brotherhood of Railway & Steamship Clerks,* 281 U. S. 548 (50 Sup. Ct. 427, 74 L. Ed. 1034); and *Virginian Railway Co.* v. *System Federation No. 40,* 300 U. S. 515 (57 Sup. Ct. 592, 81 L. Ed. 789); the national labor relations act † in *National Labor Relations Board* v. *Jones & Laughlin Steel Corporation,* 301 U. S. 1 (57 Sup. Ct. 615, 81 L. Ed. 893, 108 A. L. R. 1352); the fair labor

* 45 USCA, § 151 *et seq.*—REPORTER.
† 29 USCA, § 151 *et seq.*—REPORTER.

standards act ‡ in *United States* v. *Darby,* 312 U. S. 100 (61 Sup. Ct. 451, 85 L. Ed. 609, 132 A. L. R. 1430); and *Opp Cotton Mills, Inc.,* v. *Administrator of the Wage and Hour Division of the Department of Labor,* 312 U. S. 126 (61 Sup. Ct. 524, 85 L. Ed. 624); State minimum wage legislation for women and minors, in *West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379 (57 Sup. Ct. 578, 81 L. Ed. 703, 108 A. L. R. 1330); overruling *Adkins* v. *Children's Hospital of the District of Columbia,* 261 U. S. 525 (43 Sup. Ct. 394, 67 L. Ed. 785, 24 A. L. R. 1238); State price fixing legislation, in *Nebbia* v. *New York,* 291 U. S. 502 (54 Sup. Ct. 505, 78 L. Ed. 940, 89 A. L. R. 1469); and *Sunshine Anthracite Coal Co.* v. *Adkins,* 310 U. S. 381 (60 Sup. Ct. 907, 84 L. Ed. 1263).

So considered, there is left but little room for the view that, under Federal constitutional limitations, State legislation substituting even compulsory arbitration for economic "trial by battle" in the case of public utilities and hospitals constitutes an arbitrary and unreasonable interference with the liberty of the individuals concerned or the property rights of employer and employee.

We pass the question of "involuntary servitude" as prohibited by the 13th Amendment without more than a reference to the language of Section 13a of the act in question, which reads in part:

"Nothing in this act shall be construed to require an employee to continue rendering labor or service without his consent or to make illegal the quitting of his employment. No court shall have power to issue any process to compel any such employee to continue to render such labor or remain at his place of employment without his consent."

What is here prohibited is the instigation or calling or leading a strike, and no punishment is pro-

‡ 29 USCA, § 201 *et seq.*—Reporter.

vided for the individual who decides not to work, whether singly or in concert with others. See, however, *contra, State of Wisconsin, ex rel. Dairyland Power Co-Operative,* v. *Wisconsin Employment Relations Board,* 14 Labor Cases, 73,003 (Circuit Court for Dane County, Reis, J.).

That which was condemned in *Thornhill* v. *Alabama, supra,* as restricting the constitutional right of free speech, is not included in the instant act.

As to the exercise of the police power in the matter of labor relations which affect the public peace, health, safety and general welfare, see *State* v. *Whitaker,* 228 N. C. 352 (45 S. E. [2d] 860), upholding "An act to protect the right to work;"* pending in United States supreme court, Docket No. 660, October Term, 1947 (aff'd 335 U. S. 525 [69 Sup. Ct. 251, 93 L. Ed. —]); appeal filed March 8, 1948; *American Federation of Labor* v. *American Sash & Door Co.,* 67 Ariz. 20 (189 Pac. [2d] 912); pending on appeal in United States supreme court, No. 626, October Term, 1947 (aff'd 335 U. S. 538 [69 Sup. Ct. 258, 93 L. Ed. —]); *International Union, UAWA, AFL, Local 232,* v. *Wisconsin Employment Relations Board,* 250 Wis. 550 (27 N. W. [2d] 875, 28 N. W. [2d] 254); pending on appeal in United States supreme court; certiorari granted March 15, 1948; Nos. 580–581, October Term, 1947 (aff'd, 336 U. S. 245 [69 Sup. Ct. 516, 93 L. Ed. —]); *Lincoln Federal Labor Union* v. *Northwestern Iron & Metal Co.,* 149 Neb. 507 (31 N. W. [2d] 477); pending on appeal, filed April 22, 1948, United States supreme court, No. 761, October Term, 1947 (aff'd 335 U. S. 525 [69 Sup. Ct. 251, 93 L. Ed. —]).

*Cf. People* v. *Washburn,* 285 Mich. 119 (123 A. L. R. 311); certiorari denied, 305 U. S. 577 (59 Sup. Ct. 355, 83 L. Ed. 363).

---

* Laws 1947, p. 328.—REPORTER.

Although we are not concerned with the wisdom of the legislation in question, and notwithstanding that which follows, we determine that the provisions of the act do not offend either Federal or State constitutional limitations, on the grounds above discussed. In so doing, however, we do not deem it necessary to express an opinion on the question of whether there is such conflict in legislative policy between current Federal and State laws as to render nugatory the compulsory arbitration provisions herein with respect to those utilities whose labor relations affect commerce.

We now consider the constitutional question raised in connection with the claimed violation of the fundamental principles of division of the powers of State government as preserved by article 4, § 2 and article 7, § 9 of the Constitution of 1908:

"No person belonging to one department shall exercise the powers properly belonging to another, except in the cases expressly provided in this Constitution."

"Circuit judges shall be elected on the first Monday in April, nineteen hundred eleven, and every sixth year thereafter. They shall hold office for a term of six years and until their successors are elected and qualified. They shall be ineligible to any other than a judicial office during the term for which they are elected and for one year thereafter."

Defendants' answer to plaintiffs' attack is as follows:

"(1st) A circuit judge who becomes chairman of an arbitration board established by section 13, as amended, for the purpose of settling a single labor dispute involving the public interests and welfare, acts in his individual rather than in his judicial capacity; he does not as a person belonging to one department exercise powers properly belonging to another; or, putting it in other words: In such an

event or contingency, no person belonging to one department of the State government, when designated as member of an arbitration board, thereby and as a member of such department exercises any powers properly belonging to another. In fine, a circuit judge when designated as chairman of an arbitration board, steps out of his judicial role,. ceases to function as an officer of the court, and temporarily serves his State in an altogether different capacity;—and (2d) the chairman of such arbitration board, when designated as such to aid in the determination of a single, occasional, and transient labor dispute, cannot be said to occupy an 'office' within the meaning of that term as used in article 7,. § 9 of the Constitution of 1908."

If the act were so drafted that any person might. be appointed as chairman of the board by executive authority, and a circuit judge were thus appointed, he might possibly be said to be acting in his individual rather than in his judicial capacity; but here he only acts because he is a circuit judge, and then only on the call of the presiding circuit judge and without additional compensation to his judicial salary.

Defendants' argument thus ignores the plain constitutional language that "no person belonging to one department shall exercise the powers properly belonging to another."

The act here under consideration adds a new duty not judicial in nature to the office of circuit judge. Although in *Re Slattery,* 310 Mich. 458, 463,. we did not feel bound by *In the Matter of Richardson,* 247 N. Y. 401 (160 N. E. 655), as applied to a circuit judge acting as a one-man grand juror because he was acting in a judicial capacity, we cannot escape the reasoning of Mr. Justice Cardozo when applied to the requirements of the act in question. He said, speaking for the court in the *Richardson Case* (p. 420):

"The statute annexes or seeks to annex to the office of a judge, not a temporary power to be exhausted by a single act (as in the case of the Washington relics), but a continuing power to be exercised whenever occasion shall arise. As often as the governor commands, the judge is to obey. As often as the need arises, the call is to be met. He is to be a standing commissioner whose function is to serve when summoned. In such circumstances, the public trust does not cease to be continuing and permanent because the judge may be willing to fulfill it on one occasion and unwilling on another. As well might one urge that a power conferred upon the judges to fill vacancies in office whenever they occurred would be something other than a public trust because the judges might act as to one office and refuse to act as to another. As well might one say that the order reviewed by this court in *Matter of Davies*, 168 N. Y. 89 (61 N. E. 118, 56 L. R. A. 855), would be upheld, though the statute had been read as conferring administrative powers, on the theory that when separate applications are separately considered, there is involved in respect of each the acceptance of a separate trust. In determining the quality of the trust, regard must be had to the intention of the legislature in directing its creation. If the intention was, as here, to annex a permanent duty as an incident to the judicial office, a public trust has been created though the occasions for discharging it may be irregular or fitful."

Important as industrial peace may be, particularly in the field of public utilities and hospitals, the absolute independence of the judiciary from executive or legislative control is of transcendent import. Our form of government cannot be maintained without an independent judiciary; and, if we as a people submit to a mingling of governmental power, we then accept in fact that which we most abhor—one-man autocratic control—and the constitutional safe-

guards of our Nation and State would then be abrogated.

Some justification might possibly be made for the imposition of a quasi-judicial function such as the arbitration of disputes arising under pre-existing contracts; but we apprehend that none can be shown for the determination of issues relating to the making of new contracts between employers and employees. As to these, judges should be left unfettered to interpret and enforce them at the instance of either party thereto.

The opinions of this Court indicate that the constitutional inhibition in question is to be strictly applied. See *Houseman* v. *Kent Circuit Judge,* 58 Mich. 364; *City of Manistee* v. *Harley,* 79 Mich. 238; *People* v. *Dickerson,* 164 Mich. 148 (33 L.R.A. [N.S.] 917, Ann. Cas. 1912B, 688); *Anway* v. *Grand Rapids Railway Co.,* 211 Mich. 592 (12 A. L. R. 26); and *Koeper* v. *Detroit Street Railway Commission,* 222 Mich. 464. See, also, *In re Application of Consolidated Freight Co.,* 265 Mich. 340 (4 P. U. R. [N. S.] 397).

The arbitration of labor disputes often involves difficult and far-reaching inquiries into economic and social policies. If courts cannot be compelled to make rates for public utilities (*In re Manufacturer's Freight Forwarding Co.,* 294 Mich. 57 [36 P. U. R. (N. S.) 329]), much less should they or their occupants be compelled to fix wages, hours of labor and working conditions, or, on the other hand, arbitrate as to fair returns on invested capital. To argue that we may separate a judge as the individual servant of the State from a judge sitting as a judicial officer is too specious to stand the constitutional test imposed in this State for more than a hundred years. The people have not during that period evinced the slightest desire to return to the "territorial governor and judges" form of government. (See Ordinance

for the Government of the Territory of the United States, Northwest of the River Ohio, § 5.)

The following observations are applicable to the present situation:

"No political truth is certainly of greater intrinsic value, or is stamped with the authority of more enlightened patrons of liberty than that on which the objection is founded. The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." The Federalist No. 47.

"For this reason, that convention which passed the ordinance of government, laid its foundation on this basis, that the legislative, executive, and judiciary departments should be separate and distinct, so that no person should exercise the powers of more than one of them at the same time." (Quoted from Jefferson on Notes on the State of Virginia.) The Federalist No. 48.

"The complete independence of the courts of justice is peculiarly essential in a limited Constitution." The Federalist No. 78.

Defendant, Circuit Judge Paul V. Gadola, may not act as an arbitrator in this instance because of the limitations imposed on him by the cited sections of the State Constitution.

Another fatal defect in the act in question is the failure of the legislature to designate the standards for the exercise of power which it has delegated to the arbitration board. It is argued that, in the absence of specific tests, the rule of reasonableness is to prevail. Current disputes between employers and employees emphasize the need of such standards for the guidance of those called upon to settle labor disputes, the crux of which is generally sharp disagreement as to the reasonableness of the demands

of both sides to the controversy.   See *King v. Concordia Fire Insurance Co.,* 140 Mich. 258 (6 Ann. Cas. 87); *Michigan Central R. Co.* v. *Michigan Railroad Commission,* 160 Mich. 355; *In re Van Hyning,* 257 Mich. 146; *G. F. Redmond & Co.* v. *Michigan Securities Commission,* 222 Mich. 1; and *Hoyt Brothers, Inc.,* v. *City of Grand Rapids,* 260 Mich. 447.

A number of the acts hereinbefore cited which have to do with antistrike legislation contain certain criteria for determining fair and equitable wages, in order to avoid discriminatory treatment of employees.

For the reasons given, the writ of prohibition may issue, but without costs, a public question being involved.

SHARPE and CARR, JJ., concurred with BUSHNELL, C. J.

BOYLES, J. (*concurring in part*).  I concur in the conclusion of Chief Justice BUSHNELL on the sole ground that the designation of a circuit judge to act as a member of the arbitration board with its power to make a binding determination of the issues involved in the labor dispute makes the act unconstitutional and void.  The attempt to confer such administrative powers upon a circuit judge is inseparably involved in the entire act, inasmuch as the act is meaningless without the appointment of the arbitration board.  It is an attempt to confer upon a judicial officer nonjudicial powers and duties, in violation of the State Constitution (art. 4, § 2; art. 7, § 9).  For the reasons stated herein, I concur in issuing the writ of prohibition, without costs.

REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred with BOYLES, J.

ON PETITION FOR REHEARING.

PER CURIAM. A petition has been filed requesting a reconsideration or a clarification of the above opinion.

This case is an original proceeding in this Court seeking a writ prohibiting the defendants from proceeding as an arbitration board under section 13 of Act No. 318, Pub. Acts 1947.* (Stat. Ann. 1947 Cum. Supp. § 17.454 [14].) The question under consideration is whether the provisions for arbitration are unconstitutional in that they provide for arbitration by a board of which a circuit judge shall be a member and the chairman. No other question should be considered as having been decided.

In view of the above clarification, rehearing is denied.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.

* Act No. 318, Pub. Acts 1947 amended sections 9, 9a, and 13 of Act No. 176, Pub. Acts 1939 and added sections 9b, 9c, 9d, 9e, 9f, 9g, 13a, 22 and 22a thereto.—REPORTER.