OKRIE v STATE OF MICHIGAN

Docket No. 319550. Submitted July 8, 2014, at Detroit. Decided August 19, 2014, at 9:00 a.m. Leave to appeal denied 497 Mich 955.

Thomas R. Okrie brought an action in the Court of Appeals under MCL 600.308(4) to challenge the constitutionality of 2013 PA 164, which relocated the Court of Claims from the Ingham Circuit Court to the Court of Appeals. Before 2013 PA 164 took effect, plaintiff had filed an action against the state of Michigan, Governor Rick Snyder, and others in the Court of Claims, alleging that the taxation of his pension pursuant to 2011 PA 38 constituted a breach of contract. The underlying case was temporarily stayed, and the Court of Appeals ordered that plaintiff's petition proceed to a full hearing.

The Court of Appeals *held*:

1. The transfer of the Court of Claims from the Ingham Circuit Court to the Court of Appeals did not conflict with the separation of powers set forth in Const 1963, art 3, § 2. The Court of Claims was not a division of the circuit court; rather, it was created by and derives its powers from the Legislature, which had the authority to transfer its functions to the Court of Appeals. Plaintiff did not demonstrate that the separation-of-powers doctrine precluded 2013 PA 164 from any valid application.

2. The Court of Appeals judges appointed to serve as Court of Claims judges were not holding incompatible offices in violation of MCL 15.182. Contrary to plaintiff's argument, Const 1963, art 6, § 8 does not prohibit a Court of Appeals judge from sitting as a judge on a lower tribunal while holding elective office, and nothing in the record supported a finding that the Court of Claims judges would review their own judgments. Quo warranto was not merited.

3. 2013 PA 164 did not violate Const 1963, art 6, § 13 by reassigning the functions of the Court of Claims to the Court of Appeals. The Legislature did not exercise general control over the Ingham Circuit Court but over the Court of Claims, which was not a division of the circuit court but a legislatively created function of it.

4. Plaintiff did not show that his due-process right to an impartial decision-maker was violated when the underlying case

was moved from the circuit court to the Court of Appeals. Plaintiff did not establish that the four Court of Claims judges are biased, that the judge overseeing his case was not neutral, or that the appellate review procedure established in 2013 PA 164 gave rise to the probability of bias or appearance of impropriety.

5. Plaintiff's argument that the immediate effect given to 2013 PA 164 violated Const 1963, art 4, § 27 was without merit because it was based on the roll call vote in the House of Representatives for the bill itself rather than the vote for immediate effect, which the House Journal recorded as having garnered the requisite two-thirds majority.

Relief sought in the petition was denied.

*Law Office of Gary P. Supanich* (by *Gary P. Supanich*) for plaintiff.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Matthew Schneider*, Chief Legal Counsel, and *Patrick M. Fitzgerald, Joshua Booth*, and *Margaret Nelson*, Assistant Attorneys General, for defendants.

Before: BECKERING, P.J., and HOEKSTRA and FORT HOOD, JJ.

PER CURIAM. Plaintiff, Thomas R. Okrie, commenced this original action to challenge the constitutionality of Public Act 164 of 2013 (PA 164).[1] Plaintiff objects to the transfer of the Court of Claims from the Ingham Circuit Court (the circuit court for the 30th judicial circuit), where it has been housed since 1978, to this Court, in which appeals from the Court of Claims are also heard. Plaintiff challenges the legislation on various constitu-

---

[1] This Court is authorized to hear certain original actions. *Lapeer Co Clerk v Lapeer Circuit Judges*, 465 Mich 559, 566; 640 NW2d 567 (2002). Jurisdiction for this particular action is provided for in PA 164 itself: "The court of appeals has exclusive original jurisdiction over any action challenging the validity of [MCL 600.6404, 600.6410, 600.6413, or 600.6419]." MCL 600.308(4).

tional grounds. Defendants contend that PA 164 is constitutional and that the transfer was within the Legislature's authority. Although Michigan is not alone in creating a separate court or tribunal to hear claims made against the government, the Legislature's decision to house the trial court for claims against the state in the appellate court is very unusual and quite possibly unprecedented.[2] Nevertheless, plaintiff has not established that PA 164 is unconstitutional on its face.

## I. FACTUAL BACKGROUND

### A. HISTORY OF THE COURT OF CLAIMS

In the mid-1800s, long before the creation of the Court of Claims, the Board of State Auditors, which was a specially initiated administrative board, decided claims brought against the state:

> Before the Court of Claims was created, persons with claims for damages against the state initially sought relief before the Board of State Auditors. This board, originally created by 1842 PA 12, heard claims against the state until the early Twenties, at which time the State Administrative

---

[2] A number of jurisdictions have created a separate court or tribunal to hear claims against the state. See, e.g., 28 USC 1491; Ohio Rev Code Ann 2743.03(3)(B); NY Court of Claims Act, §§ 8 and 9 (McKinney 1963); 705 Ill Comp Stat 505/1; W Va Code 14-2-4; Tenn Code Ann 9-8-307; 42 Pa Con Stat 761. However, we note that these jurisdictions create a court or tribunal that is separate from the court that will eventually hear an appeal as of right from the original decision. In particular, we note that in Pennsylvania, although the Commonwealth Court (which functions as an intermediate appellate court) hears actions against the state as original actions, it does not hear appeals from its own decisions; instead, those appeals are heard in the Pennsylvania Supreme Court. See 42 Pa Con Stat 723(a); *Commonwealth of Pennsylvania, Dep't of Environmental Protection v Cromwell Twp, Huntingdon Co*, 613 PA 1, 14; 32 A3d 629 (2011). We have found no other court structure in the country similar to that set forth in PA 164.

Board was created to hear such claims.[3] 1921 PA 3, 1925 PA 374, 1927 PA 133, and 1929 PA 259. See, Cooperrider, *Governmental Tort Liability*, 72 Mich L Rev 187, 250-256 (1973). 1939 PA 135, the original Court of Claims Act, gave the state Court of Claims exclusive jurisdiction over claims and demands against the state or any of its departments or agencies. [*Freissler v State Hwy Comm*, 53 Mich App 530, 537; 220 NW2d 141 (1974).]

In 1939, the Legislature enacted the Court of Claims Act, 1939 PA 135,[4] and therein adopted a comprehensive scheme authorizing lawsuits against the state and its agencies. See *Greenfield Const Co Inc v Dep't of State Hwys*, 402 Mich 172, 195; 261 NW2d 718 (1978) (opinion by RYAN, J.). In 1961, the Legislature amended 1939 PA 135 and reenacted it as Chapter 64 of 1961 PA 236. The Court of Claims Act reflects the state's waiver of sovereign immunity from suit and submission to a court's jurisdiction. *Greenfield Constr Co*, 402 Mich at 195. The Court of Claims thus was legislatively created. It has limited powers, *Feliciano v Dep't of Natural Resources*, 97 Mich App 101, 109; 293 NW2d 732 (1980), with explicit limits on the scope of its subject-matter jurisdiction, *Dunbar v Dep't of Mental Health*, 197 Mich App 1, 5; 495 NW2d 152 (1992). The jurisdiction of the Court of Claims is subject to Michigan statutory law. *Parkwood Ltd Dividend Housing Ass'n v State Housing Dev Auth*, 468 Mich 763, 767; 664 NW2d 185 (2003). The Court of Claims therefore does not have extensive and inherent powers akin to those of a constitutional court of general jurisdiction. *Taylor v Auditor General*, 360 Mich 146, 150; 103 NW2d 769 (1960), disapproved on other grounds in *Parkwood*, 468 Mich 763.

---

[3] The current State Administrative Board has the discretionary authority, upon the advice of the Attorney General, to allow any claim against the state for an amount less than $1,000. MCL 600.6419(1).

[4] The current Court of Claims Act is MCL 600.6401 *et seq.*

In 1978, the Legislature exercised its statutory control over the Court of Claims, declaring in the former version of MCL 600.6404(1) that "[t]he court of claims is created as a function of the circuit court for the thirtieth judicial circuit." 1978 PA 164. Also, the 1978 Court of Claims legislation reflected that Ingham Circuit Court judges, and any judge assigned to that circuit court, could exercise Court of Claims jurisdiction. Thus, the Court of Claims had resided in the Ingham Circuit Court for 35 years before PA 164 was enacted.

In late 2013, PA 164 was introduced to enlarge the jurisdiction of the Court of Claims and transfer it to this Court. To the concern of many in the legal community, the bill was ushered through the Legislature with extraordinary speed and little allowance for discussion as to the wisdom of the proposed dramatic changes to the Court of Claims system.[5] The Senate passed and gave immediate effect to PA 164 on October 30, 2013;[6] the House of Representatives did likewise on November 6, 2013.[7] Governor Rick Snyder approved the legislation, and PA 164 became effective on November 12, 2013.[8]

[5] The scant testimony on PA 164 that was received by the Committee on Government Operations was largely in opposition and repeatedly expressed concerns with the speed of the enactment of the legislation, with several individuals and entities calling upon the Legislature to take time to allow more responses to the legislation. See House Committee on Government Operations, Testimony From 1/2013, available at <http://house.mi.gov/mhrpublic/CommitteeInfo.aspx?comkey=229> (accessed July 17, 2014) [perma.cc/8239-7UD2]. One commentator remarked that the swift manner in which the legislation was passed "is an embarrassment to the democratic ideal and should not be repeated." Hastings, *Down the Rabbit Hole with the Court of Claims*, 93 Mich B J 14, 16 (July 2014).

[6] Senate Journal 89 reflects 26 yeas to 11 nays for passage (10/30/13 Journal, p 1689).

[7] House Journal 96 reflects 57 yeas to 52 nays for passage (16/13 Journal, p 1757).

[8] The Legislature subsequently amended the Court of Claims Act to clarify that matters in the Court of Claims may be joined for trial with

PA 164 provides that the jurisdiction in the Court of Claims is exclusive and that all Court of Claims actions "shall be filed" in the Court of Appeals. MCL 600.6419(1). Under PA 164, the Court of Claims consists of four Court of Appeals judges from at least two districts.[9] The Michigan Supreme Court assigns the four judges, who may exercise the jurisdiction of the Court of Claims. MCL 600.6404(1). The judges serve two-year terms, but may be reassigned. MCL 600.6404(6). As a result of PA 164, pending Court of Claims matters were transferred for assignment among the four Court of Appeals judges sitting as Court of Claims judges. MCL 600.6404(2). The clerk of the Court of Claims[10] assigned the cases by blind draw. MCL 600.6410(3).

### B. PROCEDURAL HISTORY

In July 2013, plaintiff filed a verified class action[11] against the state of Michigan in the Court of Claims alleging breach of contract due to taxation of his pension under 2011 PA 38. The case, *Okrie v Michigan* (Docket No. 13-93-MK), was assigned to Ingham Circuit Judge Rosemarie Aquilina. In August 2013, defendants moved for summary disposition of the breach-of-

cases arising out of the same transaction pending in a trial court of the state. 2013 PA 205. Plaintiff does not challenge that amendment and it is not at issue in this case.

[9] The current Court of Claims Judges are Chief Judge MICHAEL J. TALBOT and Judges PAT M. DONOFRIO, AMY RONAYNE KRAUSE, and DEBORAH A. SERVITTO.

[10] The clerk of this Court also serves as the clerk of the Court of Claims. MCL 600.6410(1).

[11] The proposed class consists of similarly situated state and public school employees whose pensions will be subject to taxation under 2011 PA 38. For ease of reference, and because the Court of Claims denied plaintiff's motion for class certification, plaintiff is referred to in the singular.

contract claim. Plaintiff thereafter filed an amended complaint alleging unjust enrichment, breach of employment contract, and violations of the contract and takings clauses of the federal and state constitutions. Plaintiff also alleged substantive and procedural due process violations.

On November 5, 2013, the Court of Claims granted summary disposition to defendants on plaintiff's breach-of-contract claim. Defendants then moved for summary disposition of the remainder of plaintiff's claims. PA 164 took effect on November 12, 2013, and on the following day, Judge MICHAEL J. TALBOT, Chief Judge of the Court of Claims, issued an order temporarily staying all Court of Claims cases. On December 13, 2013, plaintiff filed the instant petition, the first such petition under MCL 600.308(4), to challenge PA 164.[12]

This Court ordered that plaintiff's petition proceed to a full hearing.[13] In its order, the Court invited briefs amicus curiae; however, despite the public outcry from the legal community during the Legislature's enactment proceedings, no such briefs were filed. Therefore, this Court restricts its analysis to the issues raised by plaintiff.

After this Court issued the order directing a hearing on plaintiff's petition, Judge SERVITTO granted defen-

---

[12] Once the temporary stay was lifted in the Court of Claims, plaintiff filed a second amended complaint, adding counts for breach of an investment contract purchasing service credit and breach of the Michigan Investment Plan contract. Plaintiff moved in the Court of Claims for a stay of the underlying case in light of the instant constitutional challenge to the transfer pending in this Court, but Judge DEBORAH SERVITTO, acting as a judge on the Court of Claims, denied plaintiff's motion for stay.

[13] See *Okrie v Michigan*, unpublished order of the Court of Appeals, entered April 17, 2014 (Docket No. 319550).

dants' motion for summary disposition. When this opinion was drafted, reconsideration remained pending.[14]

## II. DISCUSSION

### A. LEGAL STANDARDS

In this petition, plaintiff challenges the constitutionality of PA 164. An examination of the constitutionality of a statute presents a question of law. *GMAC LLC v Treasury Dep't*, 286 Mich App 365, 372; 781 NW2d 310 (2009). Plaintiff's issues involve interpretation of the Michigan Constitution, a process that requires the application of three rules. The first is the rule of "common understanding," which means that courts should give the Constitution the interpretation that the majority of the people would give it. See *Nat'l Pride at Work, Inc v Governor*, 481 Mich 56, 67; 748 NW2d 524 (2008). Consequently, when interpreting the Constitution, this Court examines what the text meant to the ratifiers, the people, when they ratified the Constitution. *Mich Dep't of Transp v Tomkins*, 481 Mich 184, 191; 749 NW2d 716 (2008). The second rule provides that, to clarify the meaning of constitutional provision, courts should consider the circumstances surrounding its adoption and the purpose sought to be accomplished. *Kearney v Bd of State Auditors*, 189 Mich 666, 673; 155 NW 510 (1915). Third, courts generally are to presume that a statute is constitutional. *Midland Cogeneration Venture Ltd Partnership v Naftaly*, 489 Mich 83, 90; 803 NW2d 674 (2011).

---

[14] Despite that order, this challenge to the constitutionality of PA 164 is not moot. In light of the constitutional challenges raised, the grant of summary disposition is not the type of subsequent event for which this Court may not fashion a remedy. See *In re Contempt of Dudzinski*, 257 Mich App 96, 112; 667 NW2d 68 (2003).

Plaintiff raises a facial challenge to the constitutionality of PA 164. A facial challenge is a claim that the law is "invalid *in toto*—and therefore incapable of any valid application . . . ." *Steffel v Thompson*, 415 US 452, 474; 94 S Ct 1209; 39 L Ed 2d 505 (1974). A litigant raising a facial challenge faces an arduous task. *Detroit Mayor v Arms Technology, Inc*, 258 Mich App 48, 59; 669 NW2d 845 (2003). The litigant must establish that no circumstances exist under which the statute would be valid. *In re Request for Advisory Opinion re Constitutionality of 2005 PA 71*, 479 Mich 1, 11; 740 NW2d 444 (2007). " 'The fact that the . . . [a]ct might operate unconstitutionally under some conceivable set of circumstances is insufficient . . . .' " *Straus v Governor*, 459 Mich 526, 543; 592 NW2d 53 (1999), quoting *United States v Salerno*, 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d 697 (1987). Accordingly, we must determine whether PA 164 is capable of any construction that would make it constitutional. See *Keenan v Dawson*, 275 Mich App 671, 680; 739 NW2d 681 (2007).

### B. SEPARATION OF POWERS

Plaintiff maintains that PA 164 unconstitutionally interferes with this Court's jurisdiction and blurs the line dividing the powers of government. Whether the separation-of-powers doctrine has been violated is a question of law. *Fieger v Cox*, 274 Mich App 449, 463-464; 734 NW2d 602 (2007).

The separation-of-powers clause in the Michigan Constitution provides:

> The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution. [Const 1963, art 3, § 2.]

Separating the three branches of government preserves the independence of each branch. *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 585; 640 NW2d 321 (2001). Simply put, the legislative branch makes the laws, the executive branch executes them, and the judicial branch interprets and applies them in cases properly before the courts. *Kyser v Kasson Twp*, 486 Mich 514, 535; 786 NW2d 543 (2010). More recently, our Supreme Court further explained that "[t]he true meaning [of the doctrine] is that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments; and that such exercise of the whole would subvert the principles of a free Constitution." *Makowski v Governor*, 495 Mich 465, 482; 852 NW2d 61 (2014) (citation and quotation marks omitted).

In order to determine whether PA 164 violates the separation-of-powers clause, we examine the constitutional authority granted to the Legislature with regard to the courts.

Given that the Legislature's task is to enact laws in accordance with the authority that has been granted to it, it follows that the Legislature does not have authority to alter the jurisdiction of a court in a manner that is inconsistent with our Constitution. See *Chicago & WMR Co v Nester*, 63 Mich 657, 660; 30 NW 315 (1886) (stating that the Legislature may not disturb or destroy the jurisdiction of a constitutional court, i.e., one on which the state constitution confers authority). We therefore examine the creation of the Court of Claims and the mechanism by which it is empowered in order to determine whether the Legislature had the authority to enact PA 164.

The Constitution of 1835 established the Supreme Court as the lone constitutional court in Michigan, but

also indicated that the Legislature could establish other courts. Const 1835, art 6, § 1 ("The judicial power shall be vested in one supreme court, and in such other courts as the legislature may, from time to time, establish."). It is notable that this state's first constitution established that the Legislature had the authority to establish courts. Successive constitutions narrowed and further defined that authority, but did not abolish it.

For example, the Constitution of 1850 provided for the creation of circuit courts, probate courts, and justices of the peace along with the Supreme Court.[15] Const 1850, art 6, § 1. That section also authorized the Legislature to establish municipal courts. *Id.* ("The judicial power is vested in one supreme court, in circuit courts, in probate courts, and in justices of the peace. Municipal courts of civil and criminal jurisdiction may be established by the Legislature in cities."). The Constitution of 1908 likewise permitted the Legislature to establish certain courts inferior to our Supreme Court. See Const 1908, art 7, § 1 ("The judicial power shall be vested in one supreme court, circuit courts, probate courts, justices of the peace and such other courts of civil and criminal jurisdiction, inferior to the supreme court, as the legislature may establish by general law . . . .").

The system of providing for certain constitutionally created courts, along with providing the Legislature with authority to create other courts, continues in our current Constitution. Notably, Const 1963, art 6, § 1 provides:

> The judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme

---

[15] Apparently, the Legislature's establishment and dissolution of courts had been considered with disfavor. See *Streeter v Paton*, 7 Mich 341, 349 (1859) (observing that the Legislature's "frequent changes in the judicial tribunals of the state were looked upon as an evil").

court, one court of appeals, one trial court of general
jurisdiction known as the circuit court, one probate court,
and courts of limited jurisdiction that the legislature may
establish by a two-thirds vote of the members elected to
and serving in each house.

Consequently, selected courts, such as municipal courts
and the Court of Claims, are not constitutionally cre-
ated, but instead are only constitutionally permitted,
and derive all their powers from the Legislature. *People
ex rel Wexford Co Prosecuting Attorney v Kearney*, 345
Mich 680, 687; 77 NW2d 115 (1956).

Plaintiff admits that, like the municipal courts, the
Court of Claims is not a constitutional court. Our Court
clearly has stated that the Court of Claims is a court of
legislative creation:

> The Court of Claims is a "legislative court" and not a
> "constitutional court" and derives its powers only from
> the act of the Legislature and is subject to the limitations
> therein imposed. *Manion v State Highway Comm'r*, 303
> Mich 1; 5 NW2d 527 (1942), cert den 317 US 677; 63 S Ct
> 159; 87 L Ed 543 (1942). The Legislature created a Court
> of Claims as a substitute "for the 'board of State audi-
> tors' and the 'State administrative board' for the pur-
> pose of hearing and determining 'all claims and de-
> mands, liquidated and unliquidated, *ex contractu* and *ex
> delicto* against the State' * * *". *Id.*, 20. *Taylor v Auditor
> General*, 360 Mich 146, 150; 103 NW2d 769 (1960). Thus,
> the jurisdiction granted to the Court of Claims is "nar-
> row and limited, substituting, merely, a 'court' of claims
> for the superseded claims jurisdiction of the earlier
> boards". *Id.* [*Littsey v Bd of Governors of Wayne State
> Univ*, 108 Mich App 406, 412; 310 NW2d 399 (1981).]

Given that the Court of Claims was created by legisla-
tion, the amendment of that legislation does not run
afoul of the constitutional separation-of-powers doc-
trine. As *Littsey* noted, the Court of Claims derives its
powers from the Legislature, which retains its author-

ity over that court. Accordingly, because the Legislature has authority over the Court of Claims, it could transfer the functions of that court from the circuit court to this Court.

Plaintiff asserts, however, that PA 164 violates the fundamental jurisdictional character of this Court by transferring additional duties to this Court. In contrast to the Court of Claims, the roots of this Court are grounded in our Constitution:

> The judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house. [Const 1963, art 6, § 1.]

The 1963 Constitution also set forth parameters for the Legislature to establish this Court's jurisdiction: "The jurisdiction of the court of appeals shall be provided by law and the practice and procedure therein shall be prescribed by rules of the supreme court." Const 1963, art 6, § 10.

The parties agree, and we concur, that the principal function of this Court is to act as an intermediate appellate court and to hear appeals of right from circuit courts. In addition, this Court's jurisdiction encompasses appeals by leave as well as certain original actions and any other appeal or action established by law. See Const 1963, art 9, § 32; MCL 259.110(4); 600.308(1) and (2); MCR 7.203(A) through (D); MCR 7.206(E). Notably, those jurisdictional provisions are expressed via statute, as well as court rule. While it is true that appellate jurisdiction is understood to "only lie from one court to another," *In re Mfr's Freight Forwarding Co*, 294 Mich 57, 69; 292 NW 678 (1940)

(citation and quotation marks omitted), as noted, this Court's jurisdiction is not exclusively limited to appellate matters. Further, Const 1963, art 6, § 10 expressly states that this Court's jurisdiction shall be "provided by law," and therefore, the provisions of PA 164 are consistent with the Constitution.

Although plaintiff argues that the Legislature interfered with the essential constitutionally created jurisdiction of this Court, plaintiff has not cited any law expressly forbidding the transfer. More significantly, plaintiff's argument fails to account for the fact that our Constitution expressly provides that "[t]he jurisdiction of the court of appeals *shall be provided by law* and the practice and procedure therein shall be prescribed by rules of the supreme court." Const 1963, art 6, § 10 (emphasis added). And plaintiff has not demonstrated how PA 164 fundamentally altered this Court's jurisdiction.[16] Thus, plaintiff has not demonstrated that the Legislature's decision to transfer the Court of Claims to this Court violated the separation-of-powers doctrine.

To the extent that plaintiff argues that this Court is not equipped to be a trial court, that argument fails, as only the Court of Claims, not this Court, must function as a trial court under PA 164. Admittedly, before becoming Chief Justice, Justice YOUNG commented that this Court is "poorly suited and equipped for factual development of new claims," see MCR 2.112, Comments of Justices to 2007 Amendment, providing some merit to plaintiff's argument that this Court ordinarily is not prepared to be a trial court. The issue here, however, is

---

[16] PA 164 did alter this Court's jurisdiction in one respect, by giving this Court exclusive original jurisdiction over any action challenging the validity of the amended statutes. MCL 600.308(4). However, this alteration was consistent with the constitutional mandate that this Court's jurisdiction "shall be provided by law . . . ." Const 1963, art 6, § 10.

whether the Court of Claims is outfitted to perform as a trial court. The Court of Claims has sufficiently rebutted plaintiff's argument by ably functioning as a trial court over the months preceding this decision by accepting new cases, holding hearings both in person and over the telephone, conducting settlement conferences and status conferences, and disposing of cases.

Even if plaintiff's argument had merit, we may not consider the wisdom of statutes properly enacted by the Legislature. *Taylor v Gate Pharm*, 468 Mich 1, 6; 658 NW2d 127 (2003). The courts should not exchange their judgment for that of the Legislature, which has responsibility over the legislatively created Court of Claims. See generally *Kyser*, 486 Mich at 535 (observing that the Court should not substitute its judgment for that of the Legislature in matters over which the Legislature is responsible).

Next, plaintiff argues that PA 164 erodes the constitutional division of judicial power between a superior appellate court and a trial court whose orders are subject to appellate review. The effect of PA 164 is that the Court of Appeals is required to simultaneously house an appellate court and a trial court of limited jurisdiction. Courts have long been critical of "horizontal" or "lateral" appeals. See, e.g., *In re Mfr's Freight Forwarding Co*, 294 Mich at 69 ("We cannot lose sight of the fact that appeals only lie from one court to another—not from an executive officer to a court. There must be a competent judicial tribunal to pass upon a case before an appeal can be taken to a higher court.") (citation and quotation marks omitted); *A Miner Contracting, Inc v Toho-Tolani Co Improvement Dist*, 233 Ariz 249, 254 n 7; 311 P3d 1062 (2013); *Economou v Economou*, 133 Vt 418, 422; 340 A2d 86 (1975), overruled on other grounds by *Morrisseau v Fayette*, 164 Vt

358 (1995) ("The appellate process must proceed verti-
cally, not sideways."). PA 164 requires judges from this
Court to first hear Court of Claims cases at the trial
court level, and provides for direct review of those
decisions, as of right, by the colleagues of the judges
who first heard the matter. At first glance, such a
procedure could be viewed as giving the appearance
that there is no meaningful appellate review, and that
the same court is merely rendering an appellate opinion
on a matter that it already decided. However, nothing in
PA 164 requires a Court of Claims judge to review his or
her decisions in appeals filed in this Court. And the four
Court of Claims judges will not sit in review of Court of
Claims decisions. This Court routinely screens cases to
identify potential conflicts and flags them for the judge
in question to decide whether recusal is necessary. See
Internal Operating Procedure (IOP) 7.213(D)-(3) (pro-
viding, in pertinent part, that "[t]he Court screens
cases to identify potential conflicts based on even mini-
mal involvement of a current Court of Appeals judge at
the trial court level. . . . If, upon assignment of a case, a
judge on the panel discovers a prior connection to the
case, the judge will decide whether recusal is neces-
sary."). Further, in the unlikely event that a Court of
Claims judge does not recuse himself or herself when
assigned a Court of Claims matter on appeal, parties are
free to move for disqualification. See IOP 7.213(D)-(3)
(providing that "[a] party seeking to disqualify a judge
of the Court may file a motion to disqualify."). Thus, we
do not conclude that this amounts to a violation of the
separation-of-powers doctrine.[17]

Next, plaintiff argues that PA 164 violates the
separation-of-powers doctrine because, he maintains,

---

[17] Plaintiff raises a similar argument in asserting a due process
violation. We will discuss that claim later in this opinion.

the Legislature may not combine the office of a Court of Appeals judge with that of a Court of Claims judge. Plaintiff relies on Const 1963, art 6, § 15, which involves probate courts, and provides:

> In each county organized for judicial purposes there shall be a probate court. The legislature may create or alter probate court districts of more than one county if approved in each affected county by a majority of the electors voting on the question. *The legislature may provide for the combination of the office of probate judge with any judicial office of limited jurisdiction within a county with supplemental salary as provided by law. . . .* [*Id.* (emphasis added).]

Plaintiff points out that the Constitution does not include a provision for combining the office of a Court of Appeals judge with another judicial office, such as judge of the Court of Claims. Although the Constitution expressly provides for the combination of a probate judge with another judicial office, the inclusion of § 15 was an attempt to better administrate courts in the state's small counties,[18] a consideration not relevant to the Court of Claims. We conclude that the existence of this constitutional provision does not preclude the combination of the positions of a Court of Appeals judge with a Court of Claims judge, and we decline plaintiff's invitation to engage in constitutional interpretation by negative implication. See *Lowe v Estate Motors Ltd*, 428 Mich 439, 465; 410 NW2d 706 (1987).

In addition, we reject plaintiff's contention that the Court of Claims is considered a "division" of the circuit court, thereby precluding the Legislature from interfer-

---

[18] "These permissive provisions are included to make possible better administration of these courts in the smaller counties of the state." 2 Official Record, Constitutional Convention 1961, p 3387. See also *Green v Court Administrator*, 44 Mich App 259, 261; 205 NW2d 306 (1972).

ing with the circuit court's jurisdiction. Plaintiff conspicuously neglects to provide legal authority for that assertion. See *Dunn v Bennett*, 303 Mich App 767, 775; 846 NW2d 75 (2013) (stating that when the appellant failed to include legal authority, the appellant abandoned the argument). Further, the Court of Claims Act does not support plaintiff's theory, given that the prior version of MCL 600.6404(1) indicated that the Court of Claims was "created as a *function* of the circuit court [in Ingham County]." (Emphasis added.) "Function" is defined in part as "the kind of action or activity proper to a person, thing, or institution; the purpose for which something is designed or exists; role." *Random House Webster's College Dictionary* (1997).[19] Under the former version of the statute, the circuit court was authorized merely to perform the actions or activities of the Court of Claims; the plain statutory language does not support plaintiff's contention that the Court of Claims was ever a part or division of the circuit court.

Plaintiff adds that PA 164 interferes with the judicial independence of this Court to perform its constitutionally mandated duties as an intermediate appellate court that is separate from the trial court whose actions are being reviewed. Initially, we observe that the addition of the independent Court of Claims has not impeded this Court from operating as the intermediate appellate court. Further, the combining of courts is not unprecedented. In 1998, this Court affirmed a trial court's ruling that the statute transferring judges from the Recorder's Court in Detroit, a limited jurisdiction court, to the Third Circuit Court, a general jurisdiction court, did not violate constitutional provisions regarding or-

---

[19] Because the statute does not define the term "function," it is proper to consult a dictionary for its common meaning. *Klooster v City of Charlevoix*, 488 Mich 289, 304; 795 NW2d 578 (2011).

ganization and jurisdiction of constitutionally and legislatively created courts. *Kuhn v Secretary of State*, 228 Mich App 319, 325-326; 579 NW2d 101 (1998). Moreover, we disagree that PA 164 alters the jurisdictional character of the Court of Appeals as an intermediate appellate court. Because PA 164 did not disturb this Court's jurisdiction over matters that are appealable by right and by application,[20] this Court has retained its essential character as an intermediate appellate court. Although PA 164 also expanded this Court's jurisdiction to include exclusive original jurisdiction over any action challenging the validity of statutes that pertain to the Court of Claims,[21] that lone addition did not fundamentally change this Court's jurisdiction.

PA 164 does not violate the separation-of-powers doctrine because it governs the Court of Claims, a legislatively created court deriving its powers from the Legislature. The Court of Claims was not a division of the circuit court, but was merely a function performed by the circuit court. Plaintiff has not demonstrated that the separation-of-powers doctrine precludes PA 164 from any valid application.

### C. INCOMPATIBLE OFFICES—CONST 1963, ART 6, § 8

Plaintiff argues that PA 164 results in the four Court of Claims judges holding incompatible offices. In making this argument, plaintiff cites, in cursory fashion, Const 1963, art 6, § 8, which provides:

> The court of appeals shall consist initially of nine judges who shall be nominated and elected at non-partisan elec-

---

[20] MCL 600.308(1) details matters that are appealable as a matter of right. Section 308(2) describes matters that may be appealed by leave.

[21] MCL 600.308(4) provides: "The court of appeals has exclusive original jurisdiction over any action challenging the validity of [MCL 600.6404, 600.6410, 600.6413, or 600.6419]."

tions from districts drawn on county lines and as nearly as possible of equal population, as provided by law. The supreme court may prescribe by rule that the court of appeals sit in divisions and for the terms of court and the times and places thereof. Each such division shall consist of not fewer than three judges. The number of judges comprising the court of appeals may be increased, and the districts from which they are elected may be changed by law.

Plaintiff maintains that a violation of this provision occurs when a Court of Appeals judge is assigned to fill his or her judicial office in a different manner, i.e., by assuming the duties of a Court of Claims judge. The plain language above, however, does not prohibit a judge of this Court from sitting as a judge on a lower tribunal while holding elective office.

In further support, plaintiff cites *In re Districting for Court of Appeals*, 372 Mich 227; 125 NW2d 719 (1964), in which our Supreme Court opined that this Court's districts could not be split, but instead must be drawn on county lines pursuant to Const 1963, art 6, § 8. *In re Districting* is distinguishable because our Constitution expressly provides that judges shall be elected from "districts drawn on county lines." Const 1963, art 6, § 8 does not expressly delineate the duties of a Court of Appeals judge; hence, it may be concluded that Const 1963, art 6, § 8 does not preclude this Court's judges from acting as judges for the Court of Claims.

Consider also that our Supreme Court has the constitutional authority to assign duties to judges: "The supreme court may authorize persons who have been elected and served as judges to perform judicial duties for limited periods or specific assignments." Const 1963, art 6, § 23. Additionally, Const 1963, art 6, § 4 bestows the power of superintending control over all courts on the Supreme Court. See also MCL 600.225(1)

(providing that the Supreme Court generally may assign an elected judge to serve in any other court in Michigan). The assignment of judges onto the Court of Claims as set forth in PA 164 thus is consistent with the authority granted to the Supreme Court.

Plaintiff also cites MCL 15.182, the statute providing that a public officer or employee "shall not hold 2 or more incompatible offices at the same time." We are not convinced that the statute applies to this circumstance. The Attorney General or a local prosecutor must bring an action to enforce the statute; no private cause of action exists. See MCL 15.184 (explaining that the statute governing incompatible offices "shall not create a private cause of action" and that the "attorney general or a prosecuting attorney may apply" for "injunctive or other appropriate judicial relief or remedy."). Moreover, the four Court of Claims judges continue to perform the responsibilities that they were elected to fulfill as Court of Appeals judges. In addition, they also perform work duties related to the Court of Claims. Although the offices may be considered "incompatible" if the judges reviewed their own Court of Claims decisions, nothing in the record supports a finding that the Court of Claims judges will review their own judgments once the cases they have decided are before this Court.

Likewise, plaintiff's argument that he is entitled to the exceptional remedy of quo warranto fails.[22] Quo warranto "is the proper and exclusive remedy to try title to office finally and conclusively." *Layle v Adjutant General of Mich*, 384 Mich 638, 641; 186 NW2d 559 (1971). "Where one has been found to be holding office contrary to law, courts must order their removal from

---

[22] Quo warranto is an extraordinary remedy provided for by law. *Sobocinski v Quinn*, 330 Mich 386, 389; 47 NW2d 655 (1951).

office." *Wayne Co Republican Comm v Wayne Co Bd of Comm'rs*, 70 Mich App 620, 627; 247 NW2d 571 (1976). Quo warranto relief is not merited here because we have decided that the four Court of Claims judges are not holding incompatible offices.

### D. TRANSFER OF FUNCTIONS—CONST 1963, ART 6, § 13

Plaintiff also maintains that the transfer of the Court of Claims from the Ingham Circuit Court to the Court of Appeals improperly impedes the circuit court's jurisdiction. The scope of a trial court's powers is a question of law. *Hill v City of Warren*, 276 Mich App 299, 305; 740 NW2d 706 (2007).

Generally, the jurisdiction of circuit courts, which are constitutional courts,[23] cannot be diminished by legislative enactment. *Irishman's Lot, Inc v Secretary of State*, 338 Mich 662, 665; 62 NW2d 668 (1954). See also *People ex rel Allen v Kent Co Circuit Judge*, 37 Mich 473, 475 (1877) (ruling in part that circuit courts "are constitutional courts, and so far as any jurisdiction is conferred upon [them] by the Constitution, it is beyond the reach of the legislative power").

Const 1963, art 6, § 13, which sets forth the jurisdiction of circuit courts, provides:

> The circuit court shall have original jurisdiction in all matters not prohibited by law; appellate jurisdiction from all inferior courts and tribunals except as otherwise provided by law; power to issue, hear and determine prerogative and remedial writs; supervisory and general control over inferior courts and tribunals within their respective jurisdictions in accordance with rules of the supreme court; and jurisdiction of other cases and matters as provided by rules of the supreme court.

---

[23] See Const 1963, art 6, § 11. See also Const 1963, art 6, § 1 (stating that Michigan's "one court of justice" includes "one trial court of general jurisdiction known as the circuit court").

Plaintiff cites *Mooney v Unemployment Compensation Comm*, 336 Mich 344, 353; 58 NW2d 94 (1953), for the proposition that the Legislature may not exercise general control over circuit courts. The Legislature, however, has not asserted general control over the Ingham Circuit Court in PA 164; rather, it has asserted control over the Court of Claims. As we stated previously, the Court of Claims is not a constitutional court, but was established by the Legislature pursuant to the Court of Claims Act and therefore derives all of its powers from the Legislature. It is not a court of general jurisdiction. See *Dunham v Tilma*, 191 Mich 688, 692; 158 NW 216 (1916) (recognizing the Legislature's role in determining the extent of the authority to be given to municipal courts, which received their powers from legislation, not the Constitution). If a court is a creation of the Legislature, the legislation establishing that court guides the determination of the court's authority. See *Nichols v Grand Rapids Superior Court Judge*, 130 Mich 187, 191; 89 NW 691 (1902). And, as discussed earlier, we note that the prior version of MCL 600.6404 described the Court of Claims as a "function" of the circuit court, MCL 600.6404(1). Accordingly, we cannot accept plaintiff's argument that the Court of Claims is a "division" of the circuit court.

Plaintiff adds that PA 164 changed the jurisdictional makeup of the circuit court as a court of general jurisdiction in which orders are subject to appellate review in a constitutionally tiered judicial system. The circuit court's jurisdiction derives from the general jurisdiction imparted to circuit courts by the Michigan Constitution. See Const 1963, art 6, § 13; *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 51; 832 NW2d 728 (2013). Michigan's circuit courts are courts of general jurisdiction. See MCL 600.605 (providing, in part, that "[c]ircuit courts have original jurisdiction to

hear and determine all civil claims and remedies . . . ."); *Ammex, Inc v Dep't of Treasury*, 272 Mich App 486, 494; 726 NW2d 755 (2006). Nevertheless, the circuit courts' jurisdiction is not without limits. *In re Harper*, 302 Mich App 349, 353; 839 NW2d 44 (2013). Exceptions to the general rule occur when the constitution or a statute gives exclusive jurisdiction to another court or denies jurisdiction. See MCL 600.605 (providing that circuit courts generally have original jurisdiction except "where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state"). See also MCL 600.151 (indicating that circuit court is a trial court of "general jurisdiction") and MCL 600.601 (setting forth the jurisdiction and powers of the circuit court).

Plaintiff neglects to explain how the transfer of Court of Claims' functions to this Court alters the general jurisdictional makeup of the circuit court. Admittedly, by granting exclusive jurisdiction over Court of Claims matters to the four Court of Claims judges in this Court, the Legislature divested the Ingham Circuit Court of the authority to adjudicate those disputes. But that divestiture is not prohibited under statute. See, e.g., MCL 600.605, regarding the circuit court's general jurisdiction. It simply does not follow that that transfer of authority interfered with the circuit court's general jurisdiction. The transfer of the Court of Claims therefore does not, as plaintiff contends, "diminish" the jurisdiction of the circuit court. Given that our Constitution does not otherwise expressly confer jurisdiction on the circuit courts over cases against the state, PA 164's transfer of the Court of Claims to this Court does not deprive the Ingham Circuit Court of constitutionally based jurisdiction.

Finally, that transfer does not, as plaintiff argues, create a new trial court requiring a constitutional amendment. The Court of Claims was first created by statute in 1939 and was further formed by the amended Court of Claims Act in 1961. The transfer of Court of Claims functions from one existing constitutional court to another existing constitutional court did not create an entirely new court.

### E. DUE PROCESS RIGHT TO AN IMPARTIAL DECISION-MAKER

Plaintiff contends that his right to an objective, deliberative, and reasoned adjudication before a neutral decision-maker has been thwarted. Whether a party has been afforded due process of law is a question of law. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013). In plaintiff's view, the fact that PA 164 authorizes our Supreme Court to choose the four judges to serve on the Court of Claims, see MCL 600.6404(1), in contrast to the random draw plaintiff received at the Ingham Circuit Court, calls into question whether he will receive a neutral decision-maker.

"Due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker." *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 606; 683 NW2d 759 (2004) (citation and quotation marks omitted). Due process, a flexible concept, essentially requires fundamental fairness. *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 514; 844 NW2d 470 (2014). "It is axiomatic that [a] fair trial in a fair tribunal is a basic requirement of due process." *Caperton v AT Massey Coal Co, Inc*, 556 US 868, 876; 129 S Ct 2252; 173 L Ed 2d 1208 (2009) (citation and quotation marks

omitted). "[T]he Due Process Clause incorporated the common-law rule that a judge must recuse himself when he has a direct, personal, substantial, pecuniary interest in a case." *Id.* (citation and quotation marks omitted). "This rule reflects the maxim that '[n]o man is allowed to be a judge in his own cause; because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity.' " *Id.*, quoting The Federalist No. 10 (James Madison) (J. Cooke ed. 1961), p 59.

Although plaintiff argues that PA 164 violates his right to a neutral decision-maker, plaintiff makes no specific suggestion that the four Court of Claims judges are biased, nor does he contend that the particular judge who has been assigned to this case is not a neutral judge. That the Michigan Supreme Court chooses the four judges to serve on the Court of Claims does not amount to a showing of bias. Thus, we find no due process violation based on bias that would amount to a successful facial challenge of PA 164.

In addition, we find no direct bias in the appellate review procedure established by PA 164. The statute essentially requires Court of Appeals judges to review the work of their colleagues; significantly, however, we find unfounded any concerns that the statute would require or permit Court of Claims judges to sit in review of their own decisions on appeal of those decisions. The Legislature could have alleviated concerns that this Court would review itself by including in PA 164 a specific prohibition whereby Court of Claims judges could not conduct appellate review of cases originating from the Court of Claims; however, although past practice may have allowed a judge to review his or her own decisions, that practice has not been accepted for more than a century. See, e.g.,

*Rexford v Brunswick-Balke-Collender Co*, 228 US 339, 343-344; 33 S Ct 515; 57 L Ed 864 (1913) (ruling that the appellate court should have judges who did not previously rule on the case). In addition, this Court's internal operating procedures will prevent a Court of Claims judge from sitting in appellate review of his or her Court of Claims decisions. Similarly, this Court keeps a docketing system that is separate from that of the Court of Claims; no overlap in recordkeeping exists.

Although plaintiff is unable to show actual bias, that does not end our inquiry under the due process clause. Plaintiff need not show actual bias "[i]f the situation is one in which 'experience teaches that the probability of actual bias on the part of a decisionmaker is too high to be constitutionally tolerable.' " *Hughes v Almena Twp*, 284 Mich App 50, 70; 771 NW2d 453 (2009) (citation and quotation marks omitted). For example, that risk may be present when the decision-maker:

> (1) has a pecuniary interest in the outcome; (2) has been the target of personal abuse or criticism from the party before him; (3) is enmeshed in [other] matters involving the petitioner . . . ; or (4) might have prejudged the case because of prior participation as an accuser, investigator, fact finder or initial decisionmaker. [*Crampton v Dep't of State*, 395 Mich 347, 351; 235 NW2d 352 (1975) (citations and quotation marks omitted; formatting altered).]

In evaluating this issue, we consider "whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.' " *Caperton*, 556 US at 883-884, quoting *Withrow v Larkin*, 421 US 35, 47; 95 S Ct 1456; 43 L Ed 2d 712 (1975).

In addition, the appearance of impropriety, under Canon 2 of the Michigan Code of Judicial Conduct, may provide grounds for disqualification of a judge. Canon 2 provides that judges "must avoid all impropriety and appearance of impropriety." Under this objective standard, whether an appearance of impropriety exists requires consideration of " 'whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.' " *Caperton*, 556 US at 888, quoting ABA Annotated Model Code of Judicial Conduct, Canon 2 (2004).

Although plaintiff fairly contends that the nature of appellate review set forth in PA 164 lends itself to criticism,[24] we do not find an appearance of impropriety,

---

[24] We would be remiss not to acknowledge the fact that PA 164's unusual court structure is fairly subject to criticism, albeit not rising to the level of constitutional infirmity. Most notably, the statute creates a Court of Claims where one Court of Appeals judge hears cases at the trial court level, and then a panel of that judge's colleagues on the Court of Appeals reviews the decision on direct review. Surely, we do not doubt that Court of Appeals judges can be fair when reviewing their colleagues' rulings in Court of Claims cases. See, generally, *People v Aceval*, 486 Mich 887, 889 (2010) (statement of HATHAWAY, J.) (noting that Court of Appeals judges and Michigan Supreme Court justices routinely review the decisions of their former colleagues). As members of three-person panels, we are regularly tasked with the obligation of dissenting when we disagree with the legal reasoning or conclusions of our colleagues. However, a fair concern exists with the *appearance* of how this direct appellate review will function. Although legally incorrect, the statute lends itself to lay criticism that an appeal as of right for Court of Claims cases is nothing more than a horizontal or lateral appeal. A peaceful governance based on principles such as the rule of law depends on the public's trust that the judicial system is fairly and impartially deciding cases. PA 164, with its apparently unprecedented system of housing the trial court for state claims in the only appellate court of right, could contribute to distrust in the appellate process when it concerns Court of Claims matters. See Hunt, *Legal Ethics—Attorney Conflicts of Interest—The Effect of Screening Procedures and the Appearance of Impropriety Standard on the Vicarious Disqualification of a Law Firm*, 70 Tenn L Rev 251, 278 (2002),

nor do we find that this case is the type of "extreme"
situation that would amount to a due process violation.
See *Caperton*, 556 US at 887. The "appearance of
impropriety" inquiry is an objective one, asking
" 'whether the conduct would create in *reasonable
minds* a perception that the judge's ability to carry out
judicial responsibilities with integrity, impartiality and
competence is impaired.' " *Id.* at 888, quoting Model
Code of Judicial Conduct, Canon 2 (emphasis added).
See also MCR 2.003(C)(1)(b) (providing for the disquali-
fication of a judge "based on objective and reasonable
perceptions"); *Cain v Dep't of Corrections*, 451 Mich
470, 512 n 48; 548 NW2d 210 (1996) (citation and
quotation marks omitted; emphasis added) (describing
the federal standard that "recusal is appropriate where
a *reasonable person with knowledge of all the facts*
would conclude that the judge's impartiality might
reasonably be questioned"). Objectively, although hous-
ing appellate review of Court of Claims cases in the very
same court where the cases are heard at the trial court
level appears, at first glance, strange, we are satisfied
that it does not amount to such an extreme case as to
require recusal of all Court of Appeals judges under the
Due Process Clause. See *Caperton*, 556 US at 887. Indeed,
PA 164 does not create a situation in which any Court of
Appeals judges who will be reviewing the work of their
colleagues as Court of Claims judges have any sort of
financial interest or interest because of participation in an
earlier proceeding. See *id.* at 877, 880 (explaining that
such interests can create a due process violation).
Initially, as noted, this Court's internal operating pro-
cedures will screen judges who earlier participated in a

---

quoting Llewellyn, *The Bramble Bush*, (New York: Oceana Publications,
Inc, 1960), p 171 (explaining that among the reasons for distrust and
distaste of the legal profession is that "[t]he more 'delicate and strange
[the lawyer's] work . . . the less we love him' ").

case; thus, although there is a subjective concern of a lack of meaningful appellate review, the objective facts suggest otherwise. Further, we are confident that members of this Court will maintain the highest ethical standards when reviewing Court of Claims cases that were initially decided by their colleagues. In other words, we are confident that appeals of Court of Claims cases will be given the independent, impartial review to which they are entitled, regardless of who initially decided the cases. We decline to accept plaintiff's contention that the judges of this Court are unable to impartially review the decisions of the Court of Claims judges who are their colleagues. Thus, although PA 164 creates a situation whereby Court of Appeals judges are required, on a regular basis, to review the work of their colleagues,[25] we conclude that plaintiff has not shown a clear affiliation between the decision-maker (one of the four Court of Claims judges) and the reviewing court

---

[25] Reviewing the work of a colleague is not unheard of in the judiciary; indeed, conflict panels on this Court and *en banc* proceedings in the federal circuit courts require some review of a colleague's decisions, albeit on a less frequent basis, and in a situation that is not entirely comparable to the direct review, as of right, of decisions under PA 164. In addition, circuit court judges, in years past, sat on this Court by designation, thereby requiring those judges to review the work of their colleagues. Still, the nature of reviewing the work of a colleague, even in an *en banc* manner, is not without its critics. See, e.g., Haire, Lindquist, and Songer, *Appellate Court Supervision in the Federal Judiciary: A Hierarchical Perspective*, 37 Law & Society Rev 143, 151, 160-161 (2003) (explaining that studies of the federal judiciary have found that district judges who sit on appellate panels, and therefore review their colleagues' work, are less likely to vote for reversal); Brudney and Ditslear, *Designated Diffidence: District Court Judges on the Courts of Appeals*, 35 Law & Society Rev 565, 575 (2001); Abramowicz, *En Banc Revisited*, 100 Colum L Rev 1600, 1617-1619 (October 2000) (questioning the decisions of judges in review of their colleagues, given the inevitable connections between colleagues); Rooklidge & Weil, *En Banc Review, Horror Pleni, and the Resolution of Patent Law Conflicts*, 40 Santa Clara L Rev 787, 795 (2000).

(the remaining judges in the Court of Appeals), aside from the fact that the judges sit on the same court. In the absence of the probability of bias, no due process violation has occurred. See *Monroe v State Employees' Retirement Sys*, 293 Mich App 594, 603; 809 NW2d 453 (2011) (ruling that no alignment had been shown between the decision-making board, one of whose members was an Assistant Attorney General, and the advocate, an Assistant Attorney General who represented the employees' retirement system, particularly in light of the board's statutory duty to manage the system for retirees' benefit). And, for many of the same reasons, we conclude that, objectively, there is no appearance of impropriety that would require *all* Court of Appeals judges to recuse themselves from hearing Court of Claims cases. Indeed, this Court can, and will, implement requisite screening procedures where necessary, and appellants in Court of Claims cases will receive an independent, impartial review. Thus, plaintiff's facial challenge fails. Accordingly, although we express no opinion on the wisdom of the direct review process provided for by PA 164, we do not conclude that the statute creates a due process violation or that it creates an appearance of impropriety that prevents all Court of Appeals judges from hearing Court of Claims appeals.

### F. IMMEDIATE EFFECT—CONST 1963, ART 4, § 27

Plaintiff finally argues that the immediate effect given to PA 164 violates Const 1963, art 4, § 27 because the bill did not obtain two-thirds of the votes of the members of the House of Representatives. We disagree.

A statute becomes operational on its effective date. *In re Request for Advisory Opinion re Constitutionality of 2005 PA 71*, 479 Mich at 12. Generally, the effective date of a statute is 90 days after the end of the session at

which it was passed. See *Frey v Dep't of Mgt & Budget*, 429 Mich 315, 333, 340; 414 NW2d 873 (1987). However, Const 1963, art 4, § 27 provides that the Legislature may vote to give an act immediate effect:

> No act shall take effect until the expiration of 90 days from the end of the session at which it was passed, but the legislature may give immediate effect to acts by a two-thirds vote of the members elected to and serving in each house.

Unless two-thirds of the members of each house vote for immediate effect, that act will not become effective until 90 days after the end of the pertinent session. *Genesee Merchants Bank & Trust Co v St Paul Fire & Marine Ins Co*, 47 Mich App 401, 405; 209 NW2d 605 (1973).[26] Accordingly, if each house obtains a two-thirds vote in favor, an act may take immediate effect.

Plaintiff states that the roll call vote in the House of Representatives (57 in favor, 52 opposed) demonstrates that the two-thirds necessary for immediate effect was not reached. Plaintiff, however, has cited only the record roll call vote of the yeas and nays on the bill itself. The "record roll call vote" required to pass an act, cited by plaintiff, is separate from the "rising or voice vote" taken regarding whether to give an act immediate effect. Const 1963, art 4, § 27 does not require the taking of a record roll call vote on the issue of immediate effectiveness. *Hammel v Speaker of House of Representatives*, 297 Mich App 641, 649; 825 NW2d 616 (2012). The journal entry is dispositive

---

[26] For examples of acts that were not ordered to take immediate effect because the vote for immediate effect either failed or was not taken, see *Lansing v State Bd of Tax Admin*, 295 Mich 674, 680; 295 NW 358 (1940), and *In re Contempt of Henry*, 282 Mich App 656, 682; 765 NW2d 44 (2009).

of the vote on immediate effect. *Mich Taxpayers United, Inc v Governor*, 236 Mich App 372, 379; 600 NW2d 401 (1999).

Plaintiff has failed to cite House Journal 96 of the session on November 6, 2013, which reflects that the requisite two-thirds of the representatives voted for immediate effect:

> Rep. Stamas moved that the bill be given immediate effect.
>
> The motion prevailed, 2/3 of the members serving voting therefor. [2013 House Journal 1758.]

The House Journal reflects that the two-thirds total was reached.[27] Plaintiff's argument is meritless.[28]

Plaintiff thereafter relies on *City of Pontiac Retired Employees Ass'n v Schimmel*, 726 F3d 767 (CA 6, 2013), in which a panel of the Sixth Circuit addressed the immediate effect of a bill regarding emergency managers and remanded to the district court for it to examine whether, contrary to the holding in *Hammel*, our Constitution restricts the Legislature's ability to give bills immediate effect absent a "real" two-thirds vote from the elected members. However, upon rehearing en banc, that opinion in *City of Pontiac Retired Employees Ass'n v Schimmel* was vacated, 751 F3d 427 (CA 6, 2014).

---

[27] We note that although an official dissent was registered in which more than a third of House members disputed whether this vote was in fact taken, see 2013 House Journal 1766, our Supreme Court has recognized that such a dissent "is a personal privilege merely. It has no force as legislative action, and cannot be resorted to to nullify a legislative act. It has no force as a statement of fact contradicting the journal." *Auditor General v Menominee Co Bd of Supervisors*, 89 Mich 552, 577; 51 NW 483 (1891).

[28] In making this argument, plaintiff does not contend that the bill failed to garner enough votes for immediate approval from the Michigan Senate. Such a claim would be meritless, however, given that the Senate Journal reveals that at least 2/3 of the members of the Senate voted to give PA 164 immediate effect. 2013 Senate Journal 1689.

Consequently, this Court is bound by *Hammel.* As indicated, *Hammel* supports that the two-thirds vote recorded in the Journal is a sufficient basis for this Court to rule that PA 164 properly was given immediate effect and does not violate Const 1963, art 4, § 27.

### III. CONCLUSION

We hold that plaintiff has failed to establish a constitutional infirmity in PA 164. The transfer of the Court of Claims to this Court does not conflict with the separation-of-powers doctrine because the Court of Claims is a legislatively created court. The Court of Claims judges on this Court are not holding incompatible offices. PA 164 does not violate the Michigan Constitution by reassigning to this Court the functions of the Court of Claims. Plaintiff has not shown that his due-process right to an impartial decision-maker was violated when the underlying case was moved from the circuit court to this Court. And the immediate effect given to PA 164 did not violate Const 1963, art 4, § 27 because the House Journal reflects that the motion obtained the requisite votes. In sum, plaintiff has not met his heavy burden to show that PA 164 is unconstitutional, and we must deny the relief sought in his petition.

BECKERING, P.J., and HOEKSTRA and FORT HOOD, JJ., concurred.